HANNA WISKA & others[1] *vs.* ST. STANISLAUS SOCIAL
CLUB, INC. & another.[2]

Hampden.    December 13, 1978. — June 26, 1979.

Present: HALE, C.J., ROSE, & BROWN, JJ.

*Proximate Cause. Alcoholic Liquors*, Sale to intoxicated person, Sale to minor, Motor vehicle. *Negligence*, Violation of law, Sale of liquor, Manufacturer of motor vehicle. *Pleading, Civil*, Amendment. *Witness*, Expert witness. *Motor Vehicle*, Defect.

In an action for damages arising from an automobile accident against a tavern keeper who allegedly sold alcoholic beverages to the driver

---

[1] The other plaintiffs are: Theresa Jancura (née Kolosowski); Peter Wiska, father of Hanna, seeking consequential damages; Jan Kolosowski, father of Theresa, seeking consequential damages; and Edward Jancura, husband of Theresa, seeking damages for loss of consortium.

[2] Also named as a defendant is General Motors Corporation.

of the automobile in violation of G. L. c. 138, §§ 34 and 69, the judge did not err in directing a verdict for the defendant where there was no evidence that the defendant served the driver alcoholic beverages after the time he appeared to be intoxicated and, although there was evidence that the defendant violated § 34 by selling alcohol to the minor driver, there was no evidence that the driver's intoxication was the actual or proximate cause of the accident. [815-818]

The judge at a civil trial did not abuse his discretion in denying the plaintiffs' request to amend their complaint on the third day of trial to include an additional allegation where they had more than once amended their pleadings and had had ample opportunity to include all necessary allegations. [819]

At the trial of an action against an automobile manufacturer by plaintiffs who were injured when they were thrown against a windshield as the automobile struck a utility pole, the judge did not abuse his discretion in excluding portions of an expert witness's testimony with respect to analysis and evaluation of comparative design of automobile windshields where the witness had not inspected the automobile involved in the accident, nor had he personally conducted any tests or studies or been involved in any design work on automobile windshields, and his expertise was based on the tests, reports and studies of others. [819-820]

In an action against an automobile manufacturer raising issues of negligent design of an automobile windshield and negligent failure to warn users of the dangerous characteristics of the windshield, the judge did not err in directing verdicts for the defendant where the expert testimony offered by the plaintiffs failed to raise any issue of fact regarding a design defect in the windshield or available design modifications which would have reduced the risk. [821]

TORT. Writ in the Superior Court dated February 24, 1970.

The action was tried before *K. B. Smith*, J.

*Louis Kerlinsky* for the plaintiffs.

*Philip J. Callan, Jr.*, for General Motors Corporation.

*Edward J. McDonough* for St. Stanislaus Social Club, Inc.

ROSE, J. On March 2, 1968, the plaintiffs Hanna Wiska and Theresa Jancura were injured while riding as front-seat passengers in a 1964 Pontiac automobile operated by one Kazimierz Nikiel. The automobile, travelling at approximately twenty-five miles per hour, struck a utility

pole, and the plaintiffs sustained serious facial lacerations and head and other injuries from impact with the Pontiac's glass windshield. The plaintiffs brought this action seeking damages against St. Stanislaus Social Club, Inc. (Club), proceeding on the theory that the Club was negligent in selling alcoholic beverages to the driver of the Pontiac, and against General Motors Corporation (GMC), the manufacturer of the Pontiac, alleging negligent design of an automobile windshield and negligent failure to warn. After a trial conducted prior to the July 1, 1974, effective date of the Massachusetts Rules of Civil Procedure, the judge allowed the defendants' motions for directed verdicts on all counts. The plaintiffs appealed. Mass.R.Civ.P. 1A, subparagraphs 3 & 7, 365 Mass. 731, 732 (1974). There was no error.

1. *The counts against St. Stanislaus Social Club Inc.* The plaintiffs alleged that the Club breached its duty to them by selling alcoholic beverages to Nikiel in violation of G. L. c. 138, § 34,[3] and of G. L. c. 138, § 69,[4] thereby creating liability on the part of the Club for injuries resulting from Nikiel's reckless driving.

The Club is a commercial establishment located on Chestnut Street in Chicopee, featuring a dance floor and a bar, with a parking lot provided on its premises for patrons' use. Nikiel arrived with the plaintiffs at the Club at 8:00 P.M. on March 2, 1968, and was served a drink of vodka by a waitress. The waitress testified that she knew Nikiel and that he had arrived at the Club on the night in question "by car." Nikiel left the Club for approximate-

---

[3] The statute as in effect on March 2, 1968, provided that "whoever makes a sale or delivery of any [alcoholic] beverages or alcohol to any person under twenty-one years of age ... shall be punished. ..." G. L. c. 138, § 34, as amended by St. 1962, c. 354. According to the evidence presented, Nikiel's date of birth was February 3, 1948. At the time of the accident he was twenty years old.

[4] General Laws c. 138, § 69, inserted by St. 1933, c. 376, § 2, provides in pertinent part: "No alcoholic beverage shall be sold ... to an intoxicated person. ..."

ly one hour and returned at 9:45 P.M. Before 11:00 P.M. he was served another drink of vodka by the waitress and several more drinks by bartenders at the bar. There was testimony by two witnesses that Nikiel appeared to be "staggering a little" and "wiggling" at 11:00 P.M. in the Club and that he looked "a little drunk" at that time. At about 11:00 P.M. Nikiel left the Club with Wiska and Jancura and drove from the parking lot. As the automobile turned a corner at approximately twenty-five miles per hour it struck a utility pole, and the plaintiffs in the car were seriously injured. At trial, Wiska testified that Nikiel "was driving all right" when they left the parking lot, and Jancura testified that he was driving "normally."

A tavern keeper who sells alcoholic beverages to an intoxicated person or to a minor may be held civilly liable to a third party who is injured as a result of the customer's operation of a motor vehicle while intoxicated. *Adamian* v. *Three Sons, Inc.*, 353 Mass. 498, 500-501 (1968). See *Dimond* v. *Sacilotto*, 353 Mass. 501 (1968). And, although the civil liability established by *Adamian* is grounded in the common law doctrine of negligence (see *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 275 [1970]), a violation of either § 34 or § 69 of G. L. c. 138 is some evidence of the defendant's negligence as to all consequences those statutes were intended to prevent.[5]

---

[5] General Laws c. 138, § 34, is one of many statutes designed to protect minors from their own "improvidence." *Baird* v. *Bellotti*, 393 F. Supp. 847, 864 n.17 (D.C. Mass. 1975) (dissenting opinion, Julian, J.) (vacated and remanded on other grounds, 428 U.S. 132 [1976]). Courts have recognized that statutes prohibiting sales of liquor to minors are predicated on the special susceptibilities of minors "and the intensification of the otherwise inherent dangers when persons lacking in maturity and responsibility partake of alcoholic beverages . . . the sale of the first drink which does 'its share of the work' . . . and which generally leads to the others is unequivocally forbidden." *Rappaport* v. *Nichols*, 31 N.J. 188, 201 (1959). Both G. L. c. 138, § 34 and § 69 are designed as well to protect members of the general public from unreasonable risk of harm, particularly in times when traveling by car to and from taverns is commonplace and accidents resulting from drunken driving are frequent. *Carey* v. *New Yorker of Worcester, Inc.*, *supra*

See *Adamian* v. *Three Sons, Inc., supra* at 499; *Carey* v. *New Yorker of Worcester, Inc.,* 355 Mass. 450, 453-454 (1969). In this case there was no evidence on which a jury could have found that the defendant had violated G. L. c. 138, § 69, by serving alcoholic beverages to an intoxicated person. Contrast *Adamian* v. *Three Sons, Inc., supra* at 499. While there was evidence on which the jury could have found that Nikiel appeared to be intoxicated around 11:00 P.M., there was no evidence that he was served any liquor by the defendant after that time. There was likewise no evidence that Nikiel was or appeared to be intoxicated at the Club prior to 11:00 P.M. There was evidence, however, that the defendant had sold alcoholic beverages to a minor in violation of G. L. c. 138, § 34, since several employees of the Club were shown to have served drinks of vodka to Nikiel between 8:00 P.M. and 11:00 P.M. *Carey* v. *New Yorker of Worcester, Inc., supra* at 453-454. See *Dimond* v. *Sacilotto, supra* at 502.

On two essential elements of their case, however, the plaintiffs failed to present sufficient evidence: actual causation and proximate causation. First, it must be shown that the minor's negligent motor vehicle operation was due to the influence of alcohol affecting his ability to drive. See *Smith* v. *Clark,* 411 Pa. 142, 145 (1963); 15 Ann. Survey Mass. Law 70, 77-78 n.38 (1968); Comment, 48 B.U.L. Rev. 502, 510-511 n.53 (1968). According to the evidence here, Nikiel was driving normally when he left the Club, and there was no evidence as to what caused the car to collide with the utility pole. Assuming that there was sufficient evidence to support a jury finding that Nikiel was intoxicated to some degree at the time of the accident, there was no evidence of any causal relationship between such intoxication and the accident.

at 453-454. See *Rappaport* v. *Nichols, supra* at 202; Cahn, New Common Law Dramshop Rule, 9 Clev.-Mar. L.R. 302, 310 (1960). Cf. *Adamian* v. *Three Sons, Inc., supra* at 501.

Nor was the element of proximate causation established by the evidence. It is basic that a defendant cannot be held liable unless the injury was a foreseeable consequence of the negligent act. See *Carey* v. *New Yorker of Worcester, Inc., supra* at 454. Here, there was no evidence that the defendant knew or should have known or was negligent in failing to recognize that Nikiel was a member of the class to which liquor sales are proscribed by G. L. c. 138, § 34.[6] Such evidence was essential to a finding that the plaintiffs' injuries were a foreseeable consequence of the defendant's negligence.[7] See *Rappaport* v. *Nichols*, 31 N.J. 188, 202 (1959), cited by *Adamian* v. *Three Sons, Inc., supra* at 500; 15 Ann. Survey Mass. Law, *supra* at 77-78; Comment, 48 B.U.L. Rev., *supra* at 511.

Since the evidence was insufficient to warrant a conclusion that the illegal sale of alcoholic beverages by the Club to Nikiel was the actual or proximate cause of the plaintiffs' injuries, the Club's motion for a directed verdict was properly granted.

2. *The counts against General Motors Corporation.* We construe the various counts (fifteen in all) against GMC in the plaintiffs' complaint, in light of the evidence presented at trial, as raising issues of negligent design of the 1964 Pontiac windshield, negligent failure to warn users of the dangerous characteristics of the windshield, and

[6] We note that the criminal offense established by c. 138, § 34, is defined without any element of scienter. See *Commonwealth* v. *Joslin*, 158 Mass. 482, 495 (1893). Cf. *Burlington Package Liquors, Inc.* v. *Alcoholic Beverages Control Commn., ante* 186, 190 (1979).

[7] As to another essential component of proximate causation, we assume, without deciding, that the evidence was sufficient to warrant a finding that the defendant knew or should have known that Nikiel, upon leaving the Club, would drive an automobile, based on the waitress' testimony that he had arrived "by car," and based on the fact that the Club provided a parking lot on its premises for patrons' use. See *Adamian* v. *Three Sons, Inc., supra* at 498-499. Contrast *Dimond* v. *Sacilotto, supra* at 502-503 (a finding of proximate cause was not warranted by evidence of a nearby municipal parking lot which tavern patrons could use).

strict liability. The court was correct in directing verdicts for the defendant on all counts.

Through their expert witness, an automotive consulting engineer, the plaintiffs attempted to introduce evidence showing that GMC's 1964 Pontiac windshield was unreasonably dangerous to users because of its characteristic mode of rupturing in long, jagged fragments. Alternatively, they attempted to show that GMC negligently failed to warn users that a safer windshield glass which when ruptured did so in smaller fragments had come into use in the industry in 1966, and that the 1964 windshield was unreasonably dangerous without the use of seat restraints. Much of the witness's testimony was excluded or limited by the judge on the ground that the witness was not qualified to give expert testimony on these issues. We find no error in any of the judge's evidentiary rulings at trial.

The judge did not err in denying the plaintiffs' request to amend their complaint on the third day of trial to include allegations on the issue of seat restraints since, as the record indicates, the plaintiffs had more than once amended their pleadings and had had ample opportunity to include all necessary allegations. This is a case in which the judge's exercise of discretion under Mass.R.Civ.P. 15, 365 Mass. 761 (1974), should be respected. See *Castellucci* v. *United States Fid. & Guar. Co.,* 372 Mass. 288, 289-290 (1977), citing *Foman* v. *Davis,* 371 U.S. 178 (1962). Contrast *Evans Prod. Co.* v. *D.J. Dev. Corp.,* 6 Mass. App. Ct. 306, 309 (1978).

The judge did not abuse his discretion in refusing to allow the expert to offer an opinion on whether the 1964 Pontiac windshield was dangerous to occupants in collisions at velocities over twelve miles per hour, or on what precautions a reasonable manufacturer would have taken to prevent injuries to users. The witness was properly allowed to testify as to his personal observations in conducting approximately 200 motor vehicle accident investigations, four percent of which had involved the 1964

type of glass windshield impacted from inside the vehicle. The witness' testimony on fracture characteristics of 1964 and 1966 glass windshields and their comparative injury-producing effects was properly limited to the question of common knowledge in the automotive industry that a safer glass had been developed for use in automobiles after 1966 which would fracture in small particles on impact at velocities of twenty-two to twenty-nine miles per hour, whereas 1964 glass was known to fracture in larger fragments at a velocity of twelve miles per hour.

The judge properly found that the witness was not qualified to offer a medical opinion regarding any causal relationship between the plaintiffs' injuries and the properties of the 1964 Pontiac windshield.

A judge has broad discretion to determine whether an expert has the requisite qualifications and knowledge to render an opinion, and his decision will not be reversed unless it was clearly erroneous. See *Louise Caroline Nursing Home, Inc.* v. *Dix Constr. Corp.*, 362 Mass. 306, 309 (1972); *Campbell* v. *Thornton*, 368 Mass. 528, 539-541 (1975). Contrast *Venini* v. *Dias*, 5 Mass. App. Ct. 695, 697-699 (1977). Here, the witness was a consulting automotive and mechanical safety engineer. At the time of the trial he was a technical consultant to the Vehicle Equipment Safety Commission, a governmental body which formulates proposed safety standards for motor vehicles in all the States. He had not inspected the automobile involved in the accident, nor had he personally conducted any tests or studies or been involved in any design work on automobile windshields. The judge found that the witness' expertise was based on the tests, reports and studies of others. We conclude that the judge was well within the proper exercise of his discretion in excluding portions of the witness' testimony, based on his determination that the expert was not qualified to offer an opinion on the matters in issue, involving analysis and evaluation of comparative design of automobile windshields.

Since this was not a case in which the jury could find of their own lay knowledge that there existed a design defect in the 1964 Pontiac windshield exposing users to an unreasonable risk of injury (contrast *Smith* v. *Ariens Co.*, 375 Mass. 620, 625 (1978) ), the plaintiffs' failure to adduce expert testimony on the issues of design negligence or failure to warn on the part of GMC was fatal to their case. The evidence presented at trial failed to establish that the 1964 Pontiac windshield constituted a defect attributable to the defendant presenting an unreasonable risk of harm to users. Here, as in *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 173 (1977), the plaintiffs' expert's testimony did not raise an issue of fact regarding a design defect making GMC's windshield unsafe or regarding available design modifications which would have reduced the risk. See *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 632 (1978). Contrast *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 877-878 (1978). On the contrary, the evidence showed that the type of windshield installed in the 1964 Pontiac conformed to the state of the art[8] existing in 1963, the time of manufacture, and met all safety standards required in 1964. The plaintiffs' expert testified that in 1968, the time of the collision, there was no safer glass available for use in 1964 automobiles. There was no evidence upon which the jury could base a conclusion, even with all reasonable inferences, that GMC had breached a duty to design with resonable care, nor was there any evidence, apropos of GMC's duty to warn, of alternative design improvements available prior to 1968 which GMC could or should have made with regard to 1964 automobiles.

Additionally, the plaintiffs' counts against GMC predicated on a theory of strict liability must fail. It has been held that "there is no 'strict liability in tort' apart from

[8] "State of the art" means the level of pertinent scientific and technical knowledge existing at the time. 1 Frumer & Friedman, Products Liability § 6.05 [15] (1978).

liability for breach of warranty under the Uniform Commercial Code, G. L. c. 106, §§ 2-314 - 2-318." See *Swartz* v. *General Motors Corp.*, *supra* at 629-631; *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978).

For the reasons stated above, the motion of the defendant GMC for directed verdicts was properly allowed. Judgments are to be entered for both defendants.

*So ordered.*