GLEN R. GYNAN vs. JEEP CORPORATION & others.[1]

Plymouth.  April 14, 1982. — May 5, 1982.

Present: HALE, C.J., CUTTER, & GRANT, JJ.

*Practice, Civil*, Continuance, Opening to jury, Directed verdict. *Negligence*, Design of motor vehicle, Expert opinion.

There was no abuse of discretion in the denial of the plaintiff's motion for a continuance, unsupported by affidavit, which was requested in order to secure the services of an expert witness for use at trial and to have a transcript of a deposition prepared where the plaintiff had ample opportunity to obtain expert testimony and could have completed discovery much earlier. [505-506]

In an action to recover damages for injuries sustained by the plaintiff when he was struck by a motor vehicle, a 1974 model manufactured and sold by the defendants, the judge did not err in directing verdicts for the defendants after the plaintiff's opening where plaintiff's counsel had not outlined any evidence which he expected to produce of facts which showed either any defect in the vehicle by 1974 design standards or any chain of causation between the alleged defect and the injuries to the plaintiff. [506-509]

CIVIL ACTION commenced in the Superior Court Department on April 1, 1980.

The case was tried before *Keating*, J.

*Charles E. Berg* for the plaintiff.

*David D. Dowd* for the defendants.

CUTTER, J.  Gynan seeks to recover from the defendant corporation (Jeep) and other defendants for injuries received on April 9, 1977.  He, while crossing a street, was struck by a Jeep CJ5 (the CJ5), manufactured by Jeep and sold or distributed by the other defendants.  In a prior action, Gynan had failed to recover against the operator of the

---

[1] American Motors Corporation and American Motor Sales Corporation.

CJ5, who specifically was then found (on a special question to the jury) not to have been negligent. See *Gynan* v. *Hayes*, 9 Mass. App. Ct. 721 (1980). In his present complaint, Gynan asserts, in counts for negligence and breach of warranty, that the CJ5 was so improperly designed as "to have unreasonably diminished the field of vision of [its] operators" and "obscured the view of the . . . [CJ5] to pedestrians crossing roadways at nighttime."

After entry of the case on April 1, 1980, Gynan and the defendants engaged in interrogatories and motions for further answers. A single deposition was taken on May 8, 1981. On January 23, 1981, the clerk first set the case for trial on February 4, 1981, and it eventually was called for trial on May 11, 1981. Gynan then requested a continuance (among other reasons) because (a) the transcript of the deposition would not be ready for use at trial; (b) he had learned only recently that Jeep would present a non-employee expert witness on vehicle design; and (c) that Gynan had not been able to obtain the services of such an expert for use at trial. The trial judge denied a continuance.

A jury was empanelled on May 11, 1981, and Gynan's counsel made his opening on May 13. Motions of Jeep and the other defendants for directed verdicts on the opening were granted. Gynan appealed. On June 12, all the defendants moved for counsel fees, costs, and expenses, on the ground that the proceeding against them was "wholly insubstantial, frivolous, and not advanced in good faith." See G. L. c. 231, §§ 6F, 6G, inserted by St. 1976, c. 233, § 1. These motions also were granted.

1. There was no error in refusing a continuance. On May 11, 1981, Gynan's counsel had known at least since January 24, that trial was imminent. He had not obtained an expert on vehicle design by the time he filed on January 7, further answers to interrogatories. By March 17, Gynan (in yet further answers to interrogatories) mentioned Joseph P. Ryan of Lathrup Village, Michigan, as a possible expert witness. A letter dated March 10, from Ryan to

counsel for Gynan, does not disclose that he had been retained as an expert, but merely expressed his view that the "case requires in-depth investigation." A Superior Court judge (not the trial judge) on February 19 had ordered that the case be kept on the March trial list, that further interrogatories be answered within thirty days, and that any failure by Gynan to supply the names of his expert witnesses would preclude him from offering expert testimony at trial. No expert witness other than Ryan was ever mentioned by Gynan's counsel and there was no indication on May 11, that Gynan planned to call Ryan. Indeed, Gynan (in his handwritten motion for a continuance) stated that "he has had difficulty in locating an expert willing to testify in his behalf who has sufficient breadth of knowledge and expertise."

Under Mass.R.Civ.P. 40(b) and (c), 365 Mass. 802-803 (1974), and Rule 4 of the Superior Court, and see rule 33 (1974), a continuance need not be granted on a motion unsupported by affidavit (and none was filed in this case on May 11). Whether or not so supported, a continuance in any event is ordinarily within the sound discretion of the trial judge. See *Mowat* v. *Deluca*, 330 Mass. 711, 712 (1953), and cases collected in Nolan, Civil Practice §§ 521-524 (1975). See also *Tierney* v. *Coolidge*, 308 Mass. 255, 261 (1941). Compare *Knapp* v. *Graham*, 320 Mass. 50, 55 (1946); *Sutherland Paper Co.* v. *Grant Paper Box Co.*, 183 F.2d 926, 930-931 (3d Cir.), cert. denied, 340 U.S. 906 (1950), a complicated patent case. Gynan, after entry of this case, had ample opportunity to obtain expert testimony if he could. Compare *Richman* v. *General Motors Corp.*, 437 F.2d 196, 200 (1st Cir. 1971). He could and should have completed discovery much earlier, for in effect he had been warned by two Superior Court judges of the need to expedite his preparations. The trial judge, under the rules just cited, was not required to await the transcript of the deposition taken on May 8, before proceeding to trial.

2. The considerations bearing upon whether a verdict for the defendant should be ordered upon a plaintiff's opening

were carefully discussed by Mr. Justice Ronan in *Douglas* v. *Whittaker*, 324 Mass. 398 (1949). At least where there are no "close questions," *id.* at 400, the practice has been approved. See *Boyajian* v. *Kachadorian*, 357 Mass. 121, 122 (1970).

The opening included essentially only the following items. Gynan, seventeen years old at the time of his injuries, was residing at the time of trial in Buffalo and it was unlikely that he would appear. Gynan had been attending a party on the night of April 8-9, 1977, and "had consumed a few beers." About 12:30 A.M., he sustained serious injuries while crossing the street. The CJ5, 1974 model, is designed so that the headlights of the vehicle "are located on the front grille but inboard from the outside edges of the vehicle," about twenty inches apart. The vehicle extends about thirteen inches out from the headlights, with the alleged effect that pedestrians at night cannot perceive how wide the oncoming vehicle is. Counsel also asserted that the placement of the lights results in a narrow light beam so that the vehicle's driver has a narrower field of vision than an ordinary automobile, less safe than it would have been with an alternative design. Counsel then discussed in very general terms the asserted duty of a manufacturer to design a vehicle so that one who approaches it from the front can judge its width and so that its driver can "pick up someone approaching" before impact is imminent. He said also that he would show that placing the lights further apart could have prevented the accident.

The defendants' counsel then presented their motions for directed verdicts. He pointed out, in the absence of the jury, that all statements in behalf of Gynan amounted only to conclusions, that (in his request for a continuance on May 11) Gynan's counsel had revealed that he had no expert witness ready to testify, and that the case was one which required expert testimony. Gynan's counsel then conceded that Gynan "never saw the vehicle" and was not going to testify. He then argued that the vehicle was not suited for use on paved city streets but was planned for "off-the-road

use" and that its design "compromised safety of the pedestrian and the motor vehicle public" in trying to continue and improve the World War II Jeep. The judge allowed the motions for directed verdicts.

Given full opportunity, Gynan's counsel had not outlined any evidence which he expected to produce of facts which showed either any defect in the CJ5 by 1974 design standards or any chain of causation between the alleged defect and the injuries to Gynan. The opening was inadequate on each of the grounds advanced by the defendants' counsel. (a) No facts (as distinguished from general conclusions) were asserted in the opening "from which a jury could properly conclude that it was more likely than not that the accident was the result of" a design defect in the CJ5. See *Maher* v. *General Motors Corp.*, 370 Mass. 231, 233 (1976). Gynan had the burden of showing that any such defect "caused" his injuries. See *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 633 (1978). See also *Smith* v. *Ariens Co.*, 375 Mass. 620, 626-627 (1978). He could not leave causation merely to speculation and conjecture. Gynan admittedly never saw the vehicle and had no memory of the events. This circumstance greatly reduced the likelihood of evidence of what caused the injuries to occur. See *Riddle* v. *Datko*, 448 F.2d 408, 409 (3d Cir. 1971). No other source of evidence of causation was suggested in the opening. (b) The subject of the placement of headlights and the illumination provided by them was a matter for expert testimony, for the case involved a question of compliance with Federal and other standards of illumination and of the state of motor vehicle design in 1974. This was not a case like *Smith* v. *Ariens Co.*, 375 Mass. at 625, where the simplicity of the alleged design defect made appraisal of it within the competence of the jury without expert guidance. See *Wiska* v. *St. Stanislaus Social Club, Inc.*, 7 Mass. App. Ct. 813, 820-821 (1979), and cases collected in Liacos, Massachusetts Evidence 105-107 (5th ed. 1981). Cases where expert testimony was employed to show alleged design defects include *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 881, 884 (1978),

and *Carey* v. *General Motors Corp.*, 377 Mass. 736, 739-744
(1979). Even an "expert opinion does not help if it is dem-
onstrated that it rests on speculation." *Swartz* v. *General
Motors Corp.*, 375 Mass. 628, 633 (1978). *Kennedy* v.
*U-Haul Co.*, 360 Mass. 71, 73-74 (1971); *Giannasca* v.
*Everett Aluminum, Inc.*, *ante* 208, 211 (1982). Evidence of
lack of conformity to 1974 industry practice in design would
have been relevant to liability on the warranty count and
was beyond what the jury could have known as a matter of
general knowledge. See *Back* v. *Wickes Corp.*, 375 Mass.
633, 641-643 (1978).

3. Under G. L. c. 231, § 6G, the appeal from a decision
under § 6F is to a single justice of this court. Accordingly,
that portion of the pending appeal is to be heard by the
single justice and the record is transferred for such consider-
ation. The orders of May 11, 1981, and the judgment dated
May 13, 1981, dismissing Gynan's action are affirmed, sub-
ject to later determination by the single justice of the mat-
ters under G. L. c. 231, §§ 6F and 6G, just mentioned.

*So ordered.*