DEBORAH MCGINNIS *vs.* AETNA LIFE & CASUALTY CO.

Hampshire.    April 8, 1985. — August 19, 1985.

Present: GREANEY, C.J., PERRETTA, & SMITH, JJ.

*Evidence*, Presumptions and burden of proof. *Practice, Civil*, Findings by judge. *Pleading, Civil*, Answer.

In an action by an insured seeking recovery from an insurance company on a policy insuring her against theft of her automobile, the defendant had the burden of proving its contention that the plaintiff had intentionally procured the theft of the automobile and its destruction by fire, and it was error for the judge, as trier of fact, to rule that an inference against the plaintiff could be drawn because of her failure to testify explicitly that she had not done so. [621-622]

CIVIL ACTION commenced in the Superior Court Department on June 22, 1982.

The case was heard by *John F. Moriarty*, J.

*Anne Marie Hurley* for the plaintiff.

*James M. Rabbitt* for the defendant.

SMITH, J.  In this action the plaintiff seeks to recover damages from an insurance company for (1) an alleged breach of an insurance policy insuring her against loss by theft of her automobile, (2) an alleged unfair and deceptive practice in violation of G. L. c. 176D, § 3(9)(*n*), consisting of the failure to provide her with a reasonable explanation of the denial of her claim, (3) a failure to effectuate a speedy and fair settlement of her claim after liability was reasonably clear, in violation of G. L. c. 176D, § 3(9)(*f*), and (4) an alleged intentional infliction of emotional distress. In essence, the plaintiff claims that her automobile was stolen and destroyed by fire by parties unknown. The defendant insurance company refused to pay her claim. The defendant in its answer contended, among other things, that the plaintiff had intentionally procured the loss.

The action was heard by a Superior Court judge sitting without a jury. Because of our holding, it is not necessary for us to engage in an extended analysis of the evidence. It is sufficient for our purposes to state that the plaintiff testified to the following facts. In May, 1980, the plaintiff, then seventeen years old, purchased a new Renault Le Car from Cahillane Motors (Cahillane) in Northampton. Her mother, who had provided part of the funds for the purchase, had the automobile insured by the defendant insurance company. The policy contained a clause protecting against loss by theft.

The plaintiff was involved in an automobile accident about a year after she purchased the automobile. Cahillane completed the necessary repairs by late June of 1981. The repairs were paid for by the other driver's insurance company. About a week after repairs were made to her automobile, it broke down and was towed again to Cahillane. It was repaired at the plaintiff's request and the bill came to over $1,700. The plaintiff refused to pay the bill stating that the repairs were for damage that arose from her previous accident and should be paid by the other driver's insurance company. Cahillane indicated that she was responsible for the repair bill. The plaintiff, apparently relying on advice that she had received from a lawyer's secretary, drove her car off Cahillane's premises without permission. She informed the police and Cahillane the following day of her action. Cahillane then tried unsuccessfully to resolve the dispute over her repair bill.

On August 20, 1981, the plaintiff, accompanied by her sister, drove her automobile to the Holyoke Mall to shop and see a movie. When they came out of the movie they discovered that the automobile was gone. They reported the loss to a police officer on duty at the mall. The plaintiff's mother drove to the mall, picked the sisters up and drove to the plaintiff's apartment. When they arrived at the apartment, they discovered a note requesting the plaintiff to call the Westfield police. She made the call and learned that her automobile had been found and had been towed to a garage. Shortly thereafter, they drove

to the garage and discovered that the automobile had been totally destroyed by fire.[1]

After the trial, the judge filed a memorandum that contained his findings of fact, rulings and order for judgment. He ruled that "[t]he defendant has sustained its burden of proof. It has established by a fair preponderance of the evidence that the plaintiff did indeed intentionally procure the loss." He ordered judgment to issue for the defendant, and the plaintiff has appealed.

In reaching his conclusion, it is readily apparent that the judge completely rejected the plaintiff's testimony. One of the judge's stated reasons for not finding her testimony to be credible was: "In addition to the foregoing [findings], I noticed at the trial that although the plaintiff testified at some length, she at no time unequivocally denied having hired some person to steal and torch the automobile. Both she and her sister testified that they had met no one at the Mall — but the plaintiff never stated that she had not prearranged the theft. The absence of such testimony is of particular significance because it was clear from the beginning that the defendant's defense to the action was that the plaintiff had herself intentionally caused or procured the loss." The plaintiff argues that the judge committed prejudicial error when he ruled that an adverse inference could be drawn against the plaintiff because she did not explicitly deny, from the witness stand, that she had intentionally procured her own loss. We agree with the plaintiff.

The judge was correct in ruling that the defendant had the burden of showing that the plaintiff had intentionally procured the theft of her automobile. *Richardson* v. *Travelers Fire Ins. Co.*, 288 Mass. 391, 393 (1934). Therefore, because the plaintiff did not have the burden on the issue it was not necessary for her to deny that she was involved in the loss of her auto-

---

[1] The plaintiff's mother and sister also testified in the plaintiff's behalf. In addition, a police officer testified that the plaintiff had reported to him on the evening in question that her automobile had been stolen. An appraiser testified as to the condition of the automobile when it was found. A claims adjuster and a representative of Cahillane testified for the defendant.

mobile.[2] Yet, the judge drew, in effect, an inference against the plaintiff for failing to deny explicitly in her testimony that she had intentionally procured the theft of her automobile.[3] We do not know of any rule of law that supports the drawing of such an inference in these situations. The judge, by placing "particular significance" on the failure of the plaintiff to deny procuring the theft, especially when she was never asked the question has, in effect, shifted the burden on that issue from the defendant to the plaintiff — something the judge cannot do. Therefore, there must be a new trial. We note that the plaintiff has waived her right to appeal the judge's rejection of her claim that the defendant intentionally inflicted emotional distress on her. She failed to raise that issue in her brief. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

*Judgment on counts 1 and 2 is reversed.*

*Judgment on count 3 is affirmed.*

---

[2] Nor was the plaintiff required to file any responsive pleading to the averment in the defendant's answer that she had procured her own loss. See Mass.R.Civ.P. 7(a), as amended, 385 Mass. 1215 (1982). Because the plaintiff was not required to file a responsive pleading, the averment in the defendant's answer is taken as denied. See Mass.R.Civ.P. 8(d), 365 Mass. 750 (1974).

[3] A reading of the record shows that the plaintiff implicitly denied in her testimony that she had been involved in the loss of her automobile. The record also shows that the plaintiff was not asked by her counsel (or by anyone) if she had prearranged the theft of her automobile.