Ralph SWIFT, Sr., etc., et al.,
Plaintiffs, Appellants,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 88–1052.

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1988.

Decided Jan. 20, 1989.

Thomas J. Carey, Jr., with whom Quinn & Morris, Boston, Mass., was on brief, for plaintiffs, appellants.

Martha B. Sosman, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, and ALDRICH and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Ralph Swift, Sr. (administrator of the estate of Ralph Swift, Jr.) and Vincent Walker take exception to a judgment of the United States District Court for the District of Massachusetts. Their appeal presents an interesting question as to the effect that should be given to a Massachusetts statute (since amended) regulating the sale of alcoholic beverages. Following a bench trial, the district court held, as a matter of law, that violation of the statute was not the proximate cause of an accident which resulted in the younger Swift's death and Walker's injuries. The court also held that culpability did not attach by reason of any other negligence attributable to the government, and entered judgment in favor of the United States. Because we think a

fact question was fairly presented but never resolved, we vacate and remand.

## I. BACKGROUND

This tragic tale begins and ends with one Russell Donnelly, a civilian employee at an air force base in Lexington, Massachusetts. We set forth the facts essentially as found by the district court, *Swift v. United States*, No. 84–2448–Y (D.Mass. Feb. 26, 1986) (*ore tenus* decision), *reprinted in* Joint Appendix 161–179, having first ascertained that the findings enjoy adequate record support.[1]

Donnelly, while off duty, was wont to drink at the base's non-commissioned officers' club (Club). In spite of its name, the Club encouraged the custom of the base's civilian work force. Donnelly frequented the facility. During these liquid interludes, he proved a notoriously heavy imbiber—a patron who, in his own words, "drank to get drunk." D.Ct.Op. at 166. The district court inferred (supportably, we think) that Donnelly had achieved an openly crapulous state while at the Club on more than one prior occasion, and that he "was known to employees of the Club to have been intoxicated within the six months last preceding [the accident]." *Id.*

Donnelly's previous lack of moderation did not deter the Club from serving him when he appeared on the premises late in the afternoon of September 18, 1981. Donnelly consumed a minimum of six beers and two shots of whiskey. As the alcohol took its toll, he started to exhibit telltale signs of a man who had drunk more than enough for one sitting. The Club cut him off and took steps to monitor his behavior while he remained on the premises. When one of Donnelly's companions obtained yet another beer for him, the Club's night manager confiscated it. In conformance with Club policy, the manager then ordered Donnelly to leave.

To its credit, the Club did not abandon its besotted patron to the night. Club personnel took pains to ascertain that Donnelly had no car. He said that he would try to get a ride home and walked into a nearby parking lot. When Donnelly disappeared from view, the manager became concerned and began searching the lot. He heard a car start and saw a person who he feared was Donnelly about to drive away in an old Chevrolet. The manager called base security, described the situation, and asked to have the exit gate closed. An officer, Stephen Hunn, was dispatched to the lot. Hunn observed a car in the area, but concluded that it was being driven normally. As matters later turned out, Donnelly was operating the vehicle. He was one of the last to leave before egress was barred. Within moments thereafter, the fatal accident occurred. Donnelly was at fault.

## II. VIOLATION OF THE STATUTE

■ The Federal Tort Claims Act lifts the cover of sovereign immunity from the United States and subjects the government to liability *ex delicto* based on the law of the state in which the tort was committed. 28 U.S.C. §§ 1346(b), 2674. In Massachusetts, violating a safety statute does not, as a general rule, constitute negligence per se. *Irwin v. Town of Ware*, 392 Mass. 745, 467 N.E.2d 1292, 1305 (1984); *LaClair v. Silberline Mfg. Co.*, 379 Mass. 21, 393 N.E.2d 867, 871 (1979). Nevertheless, such a violation can be evidence of negligence. *E.g.*, *LaClair*, 393 N.E.2d at 871; *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E. 2d 18, 19 (1968). In other words, proof that a statute has been violated constitutes some evidence of negligence "as to all consequences that statute was intended to prevent." *Adamian*, 233 N.E.2d at 19.

Implicit in the foregoing formulation is the question of the effect of a violation vis-a-vis the essential elements of a common law tort action: duty, breach, causation (actual and proximate), and damages. This framework has particular pertinence in Massachusetts, where common law tort

---

1. For ease in reference, we cite to this unpublished bench decision as "D. Ct. Op.", followed by a designation of the page(s) in question as numbered in the joint appendix. By and large, we do not distinguish between the two plaintiffs as their legal positions are, for our purposes, identical.

analysis continues in vogue even with respect to torts based on statutory infractions. *See Wiska v. St. Stanislaus Social Club, Inc.,* 7 Mass.App.Ct. 813, 390 N.E.2d 1133, 1135 (1979). In order to make out a tort stemming from a statutory violation, a party still must prove every element of the claim. *See, e.g., Cimino v. Milford Keg, Inc.,* 385 Mass. 323, 431 N.E.2d 920, 924 (1982) (requiring evidence of statutory violation to find breach); *Wiska,* 390 N.E.2d at 1136 (noting failure to prove causation, actual or proximate). Even so, the road is paved with a series of caveats: for instance, breaches of different statutes do not necessarily have the same effect on the myriad of tort actions which may be premised in those violations; and moreover, a particular violation need not necessarily carry the same weight in respect to each element of a tort claim. Accordingly, our analysis in this case must be anchored not in bright-line generalities, but in a specific application of a somewhat flexible set of rules.

Let us be precise. The tort claims upon which this case is centered have their roots in the disregard of a statute governing the sale of alcoholic beverages: Mass.Gen.L. ch. 138, § 69.[2] The Massachusetts courts have found common law liability premised in the first of the three statutory subsections, *i.e.,* sale of alcoholic beverages to an intoxicated individual. *E.g., Cimino,* 431 N.E.2d at 923–24. The state courts have not ruled on the issue presented by the third subsection, *id.* 431 N.E.2d at 924 n. 5 (declining to reach question), and, given the repeal, *see supra* note 2, it is not likely that the Supreme Judicial Court (SJC) will have an opportunity to do so in the future. We are thus faced, as was the court below, with the task of interpreting state law and deciding whether transgression of the particular subsection can fully ground a common law negligence action.

## III. EFFECT OF THE VIOLATION

We start this journey with what seems to us a logical first step: we consider what the legislature wrought and what, insofar as we can tell, it intended to accomplish. In section 69, Massachusetts established a statutory duty. Among other things, it said in the third subsection (if we may paraphrase): "you, barkeep, are obliged not to serve a person known to you to have been drunk within the previous six months." Once enacted, that duty inured to the benefit of both imbiber and general public. But Massachusetts law does not reflexively equate breach of duty predicated upon a statutory violation with strict liability. *See Adamian,* 233 N.E.2d at 19 (violation only some evidence of negligence). As with any common law tort, a plaintiff must still carry his burden of proving negligence and causation (both actual and proximate). *Michnik–Zilberman v. Gordon's Liquor, Inc.,* 390 Mass. 6, 453 N.E.2d 430, 433–34 (1983); *Cimino,* 431 N.E.2d at 926; *Wiska,* 390 N.E.2d at 1136.

In this case, we focus first on causation, inasmuch as the district court found that element determinative. *See* D.Ct.Op. at 176–77. Actual causation was not at issue. It brooks no argument that the alcohol served to Donnelly so impaired him that he drove recklessly, killing Swift and maiming Walker. Yet actual causation is not enough; there must be proximate cause as well. And we know the inquiry into proximate cause to be independent of that into actual cause. *See Karelitz v. Damson Oil Corp.,* 820 F.2d 529, 531 (1st Cir.1987) ("the law of torts does not allow B to recover

---

2. At the time of the accident, the statute read as follows:

No alcoholic beverage shall be sold or delivered on any premises licensed under this chapter [entitled "Alcoholic Liquors"] to a person who is known to be a drunkard, to an intoxicated person, or to a person who is known to have been intoxicated within the six months last preceding.

Mass.Gen.L. ch. 138, § 69. In January 1988, the legislature substantially trimmed section 69, deleting the references to persons known to be drunkards or to have been intoxicated within the previous half-year. *See* Mass.Stat.1987, c. 754 (approved Jan. 14, 1988). The statute now prohibits only sale or delivery "to an intoxicated person." Because the 1988 amendment has no bearing on this case, our references herein to section 69 are uniformly to the law as it stood in September 1981.

from A simply by showing the presence of 'but-for' causality"). The touchstone is foreseeability: negligence equals liability if, and to the extent that, a foreseeable risk of harm materializes. "Not what actually happened, but what the reasonably prudent person *would then have foreseen as likely to happen,* is the key to the question" of whether challenged conduct can be branded as unreasonable. 3 F. Harper, F. James, Jr. & O. Gray, *Law of Torts* § 16.9 at 468–69 (2d ed.1986) (emphasis in original). *See also Kelley v. Schlumberger Technology Corp.,* 849 F.2d 41, 44 (1st Cir.1988) (similar).

In making this evaluative judgment, courts must apply the foreseeability standard in a way that is true both to the common law and to the ends the particular statute was designed to achieve. Serving a drink to an individual who has been drunk at some time within the previous six months, by itself, creates a bare possibility, but not necessarily a likelihood, of danger. One reason this is so is that the variables incident to a previous bout of intoxication within a period spanning half a year are so many and so diverse that no reasonable set of expectations can attend the mere fact of service to someone with such a pedigree.[3] Thus, one sound way to give effect to the legislative determination that six months is a significant milepost is to consider service within that period as some evidence of negligence, leaving it to the proof in a particular case to show whether or not findings of (a) negligence, and (b) foreseeability—the required causal connection between the act and the harm—should be reached. Lighting a match in the presence of a known gas leak is reckless; lighting a match in a room where six months earlier such a leak was discovered may not be.

▪ Consonant with the method of section 69, therefore, we rule that the third subsection can serve as the premise for a duty, and that service in violation of the subsection may be the actual cause of injury, without more. Yet we hold that, though a violation of section 69's third subsection can serve as some evidence of negligence, and can combine with other evidence to sustain a tort action, it is insufficient by itself to carry the day as a matter of law.

▪ The district court, we believe, misperceived Massachusetts law on this point. The court ruled that "the mere serving of liquor to Mr. Donnelly at a time when he did not appear intoxicated, although such service was in violation of [Mass.Gen.L. ch. 138, § 69, was] not *as a matter of law* the proximate cause of the tragedy that eventually ensued." D.Ct.Op. at 176 (emphasis supplied). The determination—as witness the phrase which we have underscored—appears to have been made as one of *law,* not of *fact.* As the district judge said:

> ... [I]t is the specific language of *Wiska [v. St. Stanislaus Social Club, Inc.]* that leads me to believe as matter of law that proximate causation between the serving of liquor to someone who did not appear intoxicated [Donnelly] and the incident which occurred is lacking. And taking the two cases together, *Wiska* and *Cimino [v. Milford Keg, Inc.],* the Court concludes that the law of Massachusetts at present does not impose liability for what has occurred here.

*Id.* at 177. This, we think, was error.

Application of the legal cause standard to the circumstances of a particular case is a function ordinarily performed by, and peculiarly within the competence of, the factfinder. The SJC has consistently held questions of causation to be for the factfinder. *Irwin v. Town of Ware,* 467 N.E. 2d at 1305; *Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331, 338 (1983); *Zezuski v. Jenny Mfg. Co.,* 363

---

**3.** Illustrations of the point are limited only by fertility of imagination and breadth of human experience. The solid citizen who sips one cup of wassail too many at holiday time, or the infatuate who succumbs to overly generous doses of champagne (among other things, perhaps) during a romantic interlude, or the halfback who celebrates a Super Bowl victory with beer rather than discretion, or the guest of honor who becomes besotted at a birthday party, may or may not be prone to recurring inebriation. Certainly, it cannot be honestly stated that any such occurrence, standing alone, renders service of liquor to the subject some six months later unreasonably dangerous.

Mass. 324, 293 N.E.2d 875, 878–79 (1973). And, this court has manifested a similar persuasion; for example, we recently observed that "[n]ot only ordinary fact questions, but also 'evaluative applications of legal standards (such as the legal concept of "foreseeability") to the facts' are properly [questions for the factfinder]." *Springer v. Seamen*, 821 F.2d 871, 876 (1st Cir. 1987) (quoting W. Prosser & W. Keeton, *Prosser and Keeton on Torts* 320 (5th ed. 1984)) (footnote omitted); *see also Marshall v. Perez Arzuaga*, 828 F.2d 845, 850–51 & n. 8 (1st Cir.1987) (discussing foreseeability as a question within the province of the factfinder), *cert. denied,* —— U.S. ——, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988).

■ What we have said as to proximate cause is equally true as to negligence. The statutory violation was some evidence of negligence, but not necessarily dispositive of the question. Notwithstanding transgression of the statutory duty, it remained for the trial court, *qua* factfinder, to determine whether, on the record as a whole, defendant's agents employed "that degree of care, vigilance, and forethought which, in the discharge of the duty then resting on [them], the person of ordinarily caution and prudence ought to exercise under the [same or similar] circumstances." *Beaver v. Costin*, 352 Mass. 624, 227 N.E.2d 344, 346 (1967) (quoting *Altman v. Aronson*, 231 Mass. 588, 121 N.E. 505, 506 (1919)).

Nor can we fill the resultant void on appeal. In a bench trial, it is apodictic that, if there are "various permissible views of the proof ... it [is] the district judge's prerogative, indeed, his duty, to choose among them." *Keyes v. Secretary of the Navy*, 853 F.2d 1016, 1027 (1st Cir.1988). Assaying the quality of defendant's acts and omissions—whether there was negligence and if so, whether that negligence was the legal cause of the accident which ensued—adjures just such a judgment call.

We cannot tell with any real assurance how the district court might have decided these questions if it had recognized the true state of the law. At this point, we could but speculate—and it would disserve our proper role to do so. The most appropriate course, in our view, is to remand for a new trial, so that the needed factfinding can be accomplished by the nisi prius court, in the conventional manner, with Mass.Gen.L. ch. 138, § 69 placed in its due perspective.

## V. CONCLUSION

We need go no further.[4] For the reasons mentioned, the judgment below will be vacated and the case remanded for further proceedings consonant herewith.

**VACATED AND REMANDED.**

ALDRICH, Senior Circuit Judge, dubitante.

I join in much of the court's opinion, including the holding that the district court is to be read as ruling that the presently relevant portion of section 69 can not support an action for tort liability. While I do not seriously object to a remand on the issue, I wonder if this court should not go even further in the matter of foreseeability of intoxication and hold, not that foreseeability of intoxication as a result of serving alcohol to one within the six month restriction is a question of fact, but that the legislature had determined that issue against the barkeep as a matter of law.

I see two issues in this case: whether the Club should have foreseen Donnelly's getting drunk, and whether, if drunk, the accident. The second is the run-of-the-garden factual issue involved in the cases the court cites. The common phrase "some evidence of negligence" is an expression covering an issue of fact normally open to diverse results depending on the record as a whole.[1] However, there need not always be an issue of fact. In *Follansbee v. Ohse*, 293

---

**4.** Because of the view we take of the lower court's rulings and the result we reach, we need not consider—and express no opinion upon—the asseveration that Donnelly's theft of the car was an intervening act sufficiently independent of the defendant to snap the chain of legal causation. That matter is open to the district court's consideration at the new trial.

**1.** See, however, the interesting discussion of duty versus proximate cause and foreseeability in *Cimino v. Milford Keg, Inc.*, 385 Mass. 323, 328 n. 6, 431 N.E.2d 920 (1982).

Mass. 48, 199 N.E. 387 (1935), the court, though quoting the some evidence principle, held foreseeability as a matter of law, by directing a verdict. There the party accused of negligence had violated a statute requiring affixing a "tie line," a safety device, to a scaffolding. I take this to mean that though in the usual case the ultimate result, though direct, may, or may not, have been foreseeable, in some cases there may be a single, direct result, necessarily foreseen. I must think that by its forbidding the serving of alcohol to one who had been known to have been intoxicated within six months, the avoidance of drunkenness as a result was inescapably what the legislature, to quote the court, "intended to accomplish." This does not mean that the particular consequence of the drunkenness was foreseen, but I would think that drunkenness always was. The statute made no exception for a solitary fall from grace. I see no room for a court to suggest exceptions, and would be much happier had we ruled that defendant is charged with the drunkenness, leaving only the balance of the case to the district court.