MARK A. BENNETT *vs.* EAGLE BROOK COUNTRY STORE, INC.

No. 87-1134.

Norfolk. November 16, 1988. - November 13, 1989.

Present: ARMSTRONG, CUTTER, & BROWN, JJ.

Further appellate review granted, 406 Mass. 1102 (1990).

*Alcoholic Liquors*, Sale to one known to have been intoxicated within preceding six months. *Negligence*, Violation of law, Sale of liquor.

Sales of alcoholic beverages "to a person who is known to be a drunkard" or "to a person who is known to have been intoxicated within the six months last preceding," in violation of G. L. c. 138, § 69, prior to its amendment by St. 1987, c. 754, was evidence of the seller's negligence toward a person injured a short time after the sales as the result of the purchaser's improper operation of a motor vehicle due to his intoxication. [37-39]

At the trial of a negligence claim against a seller of alcoholic beverages, there was sufficient evidence for the jury to find that the defendant, in violation of G. L. c. 138, § 69, prior to its amendment by St. 1987, c. 754, sold alcoholic beverages to a person whom it knew to be a drunkard and whom it knew to have been intoxicated within the six months last preceding. [39-40]

CIVIL ACTION commenced in the Superior Court Department on October 23, 1981.

The case was tried before *William H. Carey*, J.

*John E. Coyne* for the defendant.

*Peter C. Kober* for the plaintiff.

BROWN, J. Shortly after midnight, on October 12, 1981, Donald Sanders, while operating a motor vehicle, severely injured the plaintiff, Mark A. Bennett. Sanders had become greatly intoxicated on the evening of the accident.

Sanders, a full-time bartender for Eagle Brook Country Store, Inc., doing business as Eagle Brook Saloon (EB) in Norfolk, began drinking at that establishment immediately after his shift ended at approximately 6:15 P.M. on October

11. During the three hours that Sanders was at EB, he was served four drinks (scotch and water). He also ate dinner there. Sometime between 9:30 P.M. and 10:00 P.M. Sanders drove from EB to Thackeray's, a bar and restaurant in Walpole, with one Girvan, who also was an employee of EB. Sanders usually drank daily at Thackeray's. Here Sanders drank a minimum of one and one-half drinks.

After having consumed at least five and one-half drinks at EB and Thackeray's, Sanders, "feeling the effects of alcohol," left Thackeray's. From Thackeray's Sanders and Girvin returned to EB. Sanders was, by his own admission, intoxicated at that time. This was confirmed by Girvan, who testified that while enroute to EB, she had become concerned about Sanders' ability to operate the motor vehicle because he was driving erratically. Consequently, when Girvan got out of the automobile at EB, she rolled down the vehicle's window and turned off the heat in order to "keep him [Sanders] awake." She also urged Sanders to remain at EB. Sanders refused, and departed in the vehicle.

Some few minutes later, Sanders, swerving in his automobile from lane to lane on Route 1 in Foxborough, crossed over the yellow line dividing the two directions of traffic and struck a motorcycle driven by the plaintiff. Sanders immediately departed from the scene of the accident, leaving the severely injured victim by the side of the road, where he remained for forty-five minutes until he was discovered. Shortly thereafter, Sanders, who had abandoned his vehicle in a nearby parking lot, was observed hitchhiking by a State police trooper, who at that time took him into protective custody.[1]

Bennett brought a civil action against Sanders, one Burgess, the owner of the automobile Sanders was driving, and the various establishments that served Sanders. There were three defendants left at trial.[2]

---

[1]Sanders was subsequently convicted of operating while under the influence of alcohol and of leaving the scene of an accident.

[2]Before trial, both Sanders and Burgess settled with the plaintiff.

At the conclusion of the evidence and the charge the judge submitted sixteen questions relative to the plaintiff's common law claims to the jury for their special verdicts under Mass.R.Civ.P. 49, 365 Mass. 812 (1974). An additional question was submitted to the jury after they had responded to the first twelve special questions. The jury returned verdicts against EB and one of the other codefendants, Suburban Restaurants, Inc., owner of Thackeray's. The jury returned a verdict in favor of a third defendant, D & N Corporation, owner of the Red Snapper Restaurant.[3] Only EB has taken this appeal.

EB claims on appeal that (1) G. L. c. 138, § 69, as amended by St. 1973, c. 287, did not give rise to a civil cause of action insofar as it prohibited service of alcoholic beverages to a person who was a drunkard or was known to have been drunk in the preceding six months and (2) there was insufficient evidence upon which the jury properly could have concluded either that EB knew Sanders was intoxicated within the six months preceding the date of the accident (October 11-12, 1981), or that EB knew Sanders was a drunkard.

1. *Cause of action based on G. L. c. 138, § 69.* The statute itself does not specifically provide for civil liability in circumstances where, as here, a plaintiff seeks money damages in an action against a restaurant or bar, alleging that it had negligently sold liquor to a customer in violation of its duty to the public under § 69. See *Three Sons, Inc.* v. *Phoenix Ins. Co.,* 357 Mass. 271, 275 (1970). Such an action must be grounded on the usual doctrines of negligence, although a violation of the statute is some evidence of the defendant's negligence. See *Wiska* v. *St. Stanislaus Social Club, Inc.,* 7 Mass. App. Ct. 813, 816 (1979). See also *Michnik-Zilberman* v. *Gordon's Liquor, Inc.,* 390 Mass. 6, 11 (1983). On several occasions the trial judge stated in his instructions to the jury that a violation of the statute is merely evidence of negligence and not negligence per se.

---

[3]The jury apparently did not credit the testimony that Sanders also had two alcoholic drinks at the Red Snapper on the evening in question.

At the time of the accident (and trial), G. L. c. 138, § 69, provided that:

> "No alcoholic beverages shall be sold or delivered on any premises licensed under this chapter to a person who is known to be a drunkard, to an intoxicated person, or to a person who is known to have been intoxicated within the six months last preceding."[4]

The purpose of the statute is "to protect members of the general public from unreasonable risk of harm, particularly in times when traveling by car to and from taverns is commonplace and accidents resulting from drunken driving are frequent." *Wiska* v. *St.Stanislaus Social Club, Inc.*, 7 Mass. App. Ct. at 816 n.5. To date, the statute has been applied to claims of negligence on the part of a seller or supplier of alcoholic beverages to intoxicated persons. See *Dimond* v. *Sacilotto*, 353 Mass. 501, 502 (1968); *Carey*, 355 Mass. at 453-454; *Wiska*, 7 Mass. App. Ct. at 816. See also *Rappaport* v. *Nicols*, 31 N.J. 188, 201-202 (1959). By their answers to the special questions the jury found that Sanders was not intoxicated when served at EB, but that he was known by EB to be a drunkard and to have been intoxicated within the preceding six months.

We have found no case in this Commonwealth in which a court has applied the statute to claims of negligence on the part of a seller or supplier of alcoholic beverages to a "known" drunkard, or a person who has been intoxicated in the six months preceding the alleged negligent act. The closest our courts have come to deciding this issue was in *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327 n.5 (1982), wherein it was stated that "[b]ecause the evidence is more than sufficient to show that the defendant served [the driver] while he was obviously intoxicated, we need not reach the issue whether the second violation of § 69 found by the jury in response to special questions (service to a person who had

---

[4]By St. 1987, c. 754, the prohibition on sales in § 69 was narrowed to intoxicated persons only.

been intoxicated within the past six months) is sufficient, standing alone, to support civil liability."

The defendant argues that there is no ground for recognizing such a cause of action; that it is unwarranted and inconsistent with the legislative history and public policy in Massachusetts.

Although there has been no definitive resolution of the issue, we think that the Legislature was entitled to outlaw such sales and that evidence of them could form a sufficient basis for a cause of action. The cases suggest that a violation of § 69 is "some evidence of the defendant's negligence as to *all* consequences the statute was intended to prevent" (emphasis supplied). *Adamian* v. *Three Sons, Inc.*, 353 Mass. 498, 499 (1968). See *Three Sons, Inc.*, 357 Mass. at 275; *Wiska*, 7 Mass. App. Ct. at 816. See also *Wood* v. *Ray-Al Cafe, Inc.*, 349 Mass. 766 (1965); *Carey*, 353 Mass. at 453. We conclude that in the present circumstances the jury properly could infer evidence of negligence from a violation of § 69 by the defendant.

2. *Sufficiency of the evidence.* The defendant next argues that there was no evidence from which the jury could have found that EB knew Sanders had been intoxicated within six months preceding October 11-12, 1981, and that there was no evidence to prove EB knew Sanders was a drunkard. There was sufficient evidence introduced to support the jury findings with respect to both questions. The admission by Sanders that he had been drunk at EB at least once between early September and the date of the accident (October 12), combined with the testimony of Girvan, an employee of EB, that she had seen him drunk at EB on one or two prior occasions, provided an adequate evidentiary basis for the jury verdict. Such knowledge can be imputed to the owners of EB. See, e.g., *Devaux* v. *American Home Assur. Co.*, 387 Mass. 814, 818 (1983). Moreover, testimony was given by one Rignanese, an experienced bartender, who stated that he had seen Sanders "drink to excess" and "drunk" at EB on several occasions.

In the particular circumstances presented here, there also

was sufficient evidence in the record to support a finding that Sanders was a drunkard and that EB was aware of that fact.

3. *Answers to special questions.* At trial, a claim that the jury's answers to two of the special questions were inconsistent punctuated the jury's answers to the original sixteen questions. An ensuing colloquy caused the judge to request a response to an additional question. We have no occasion to explore the claim here. The issue has been waived because the defendant "has failed to raise that issue in [its] brief. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 919 (1975)." *McGinnis* v. *Aetna Life & Cas. Co.*, 20 Mass. App. Ct. 619, 622 (1985).

*Judgment affirmed.*