Dohoney,J.
Rosemary H.WielockandJohnWielockseektorecoverforalleged injuries resulting from a fall on a step or platform at the rear of the premises of the Defendant Webster Credit Union in Webster, Massachusetts. The Defendant and Third Party Plaintiff Webster Credit Union brought aThird Party Complaint against the Third Party Defendant William E. S. Bird. Bird was the architectfor renovations to the Credit Union building which included the rear where Rosemary Wielock fell. Wielock subsequently asserted claims directly against Bird.
Wielocks assert that Webster Credit Union was negligent in failing to warn of certain hazards to the premises. The allegations against Bird assert that he negligently designed the premises. The Trial Judge ordered that the Wielocks recover against Webster Credit Union and Bird for $6,428.00.
The Defendant Bird filed the following Requests for Rulings of Law and the Trial Judge took the action noted thereon.
38. To prove negligence on the part of the defendant Bird, plaintiff must offer expert testimony to the effect that the defendant Bird failed to exercise that degree of care of a reasonably prudent architect under similar circumstances. (Denied as to the pattern of the brick paving — the consistent appearance of the pattern extending over each platform is a matter within the realm of common experience and can be so judged.)
39. The evidence is insufficient to warrant a finding that the defendant Bird was negligent in the circumstances of this case. (Denied)
40. Absent exceptional circumstance, a fact finder instructed by common knowledge and experience cannotwithoutthe aid of expert testimony determine whether the conduct of a professional architect is violative of such architect's duty of care imposed by law. (Denied)
The rulings thus present the issue whether expert testimony was required to prove the negligence of a professional architect.
From the Findings of Fact which were incorporated with Report, we learn thatthe rearexitofthe WebsterCredit Union wasdesigned bytheDefendantBird.Therear exit begins with a platform which is level with the rear door. This platform extends seven feet to a step down. This step is five inches. The platform then extends five feet to a curb at the parking lot. Both the seven foot platform and five foot platform *13 are paved with bricks laid in the same pattern. There is a break in the pattern at the step between the two platforms. Rosemary Wielock fell at the break between the two platforms because shewas misled bythedeceptíve pattern andfailed to discern the difference in level. There was no expert testimony relative to the pattern of the steps or to the professional standards of design by architects performing similar work. From the action on the rulings, we learn thatthe Trial Judge did notfeel that expert testimony was required.
Initially, we must determine whether negligence cases against professionals require expert testimony. There appears to be no decided case in Massachusetts involving architects. However, the rule withrespectto legal malpractice is stated in Pongonis v. Saab, 396 Mass. 1005 (1985) to the effect that expert testimony is generally necessary to establish thatthe attorney failed to meetthe standard of care owed by an attorney inaparticular case butitisnot essential where theclaimedlegal malpractice is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence. See also Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein. P.C., 25 Mass. App. Ct. 107 (1987). See also Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Actions Against Attorneys, 14 A.L.R. 4th 170 (1982).
Thus, we must therefore determine whether the error was so obvious that the fact finder could rely on his common knowledge to infer negligence. Generally, certain design defects are clearly within the knowledge of the factfinder. See Smith v. Arlens Co., 375 Mass. 620 (1978) (jury can determine whether unshielded metal protrusions on the handle bar of a snowmobile constitutes a design defect with an unreasonable risk of harm); do Canto v. Ametek, Inc., 367 Mass. 776 (1975) (jury could determine on their lay knowledge whether the failure to immediately stop was a design defect in a commercial ironing machine). See also Richard v. Amer. Manufacturing Co., Inc., 21 Mass. App. Ct. 967 (1986). Certain design defects are also clearly beyond the common knowledge of afactfinder. See Gynan v. Jeep Corp., 13 Mass. App. Ct. 504 (1982) further app. rev. den. 386 Mass. 1104 (placement and illumination of headlights and compliance with state and federal standards and practices). See also Goffredo v. Mercedes-Benz Truck Co., 402 Mass. 97 (1988).
The number of cases involving walkways and related areas is legion. Our examination leads us to the conclusion that the configuration of the walkway would not require expert testimony. See Adams v. United States Steel Corp., 24 Mass. App. Ct. 102 (1987), where expert testimonywas excluded with the Courtfeelingthe jury able to determine whether a hole in a parking lot was dangerous; McInnis v. Tewksbury, 19 Mass. App. Ct. 310, 313 (1985), further app. rev. den. 394 Mass. 1103, where the Court did not feel that expert testimony was necessary to determine the amount of sawdust necessary in a pit where seventh grade students were directed to jump and stated “Juries routinely are asked to determine whether particular ground surfaces are reasonably safe in the particular circumstances”; Thomas v. Tom's Food World Inc., 352 Mass. 449 (1967) where the Court stated expert testimony was not needed to who the hazard of walking down a forty or forty-five degree grade; Merwin v. De Raptellis, 338 Mass. 118 (1958) where the Court felt expert testimony was not necessary to conclude that a clicking sound indicated movement of a stair tread and that repeated walking on it caused it to slip out of place; and Johnson v. Orange, 320 Mass. 336 (1946) where the Court upheld the exclusion of expert evidence on the proper construction of adriveway entrance over a sidewalk by saying that the matter could easily be comprehended by a jury.
In our case, the design defect consisted solely in the configuration of certain bricks to create the impression of a continuous surface. There is no question about design strengths or quality of materials or alternative materials. Nor is there any evidence of competing cost figures. In our case the simple placement of warning strips or signs might have been sufficient to avoid the impression of a continuous surface. There is really nothing beyond common sense. Thus the question of *14 negligence was properly decided by the Trial Justice.
Accordingly, the Trial Justice was able to reach a decision without the aid of expert testimony. Thus,there was no error.