John L. KELLY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 87–1100–C.

United States District Court,
D. Massachusetts.

May 21, 1990.

William A. Brown, Boston, Mass., for plaintiff.

George B. Henderson, II, Asst. U.S. Atty., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on motions by the plaintiff and the defendant. The plaintiff, John L. Kelly, originally brought this action against two individual defendants, Robert Stutman and Carlo Boccia, alleging tort claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80. In the complaint, Kelly asserted claims for defamation (counts two and three) and for negligent failure to investigate (counts one and four). On March 30, 1989, this Court dismissed counts two and three as barred by a statutory exception for defamation suits under the FTCA. *See* 28 U.S.C. § 2680(h). On the same date, this Court also substituted the United States as a defendant for Stutman and Boccia and dismissed the individual defendants with prejudice pursuant to a recent amendment to the FTCA. *See* 28 U.S.C. § 2679(d).

The plaintiff has now moved for reconsideration of the dismissal of the individual defendants asserting that the United States was improperly substituted as a defendant. In turn, the defendant United States has moved for summary judgment claiming that this Court has no subject matter jurisdiction under the FTCA to hear this case. For the reasons stated below, the plaintiff's motion for reconsideration should be denied, and the defendant's motion for summary judgment should be granted.

## I.

The relevant facts in this case focus on the compromise of a special investigation by the Drug Enforcement Administration ("DEA"). In June 1979, the plaintiff Kelly, a Special Agent for the DEA and Kevin Kenney, another DEA Special Agent, started an investigation into the criminal activities of suspected drug trafficker Frank Lepere. In August 1980, various federal and state agencies including the DEA formed a special task force in Boston to investigate Lepere. Kelly and Kenney were the two DEA Special Agents assigned to the task force.

At this time, Carlo Boccia was an Assistant Special Agent–In–Charge at the DEA Divisional Office in Boston. During the same time, Robert Stutman was the Special Agent–in–Charge who headed the DEA Divisional Office in Boston and who supervised Boccia. Stutman and Boccia remained in these positions at all times relevant to this case.

In late 1980, the task force began gathering information on Lepere. As part of the investigation, the task force began to track the destination of calls made from Lepere's telephone by checking the pen register. In December 1980, Lepere stopped using his telephone indicating that the task force investigation had been compromised.

According to Kelly, the task force came to suspect him of leaking confidential information to Lepere. On January 5, 1981, as alleged in the complaint, Kelly was told by his supervisor, John Morgan, that "they (the task force members) think you are the leak." Sometime later in January 1981, according to the complaint, Boccia contacted Special Agent Kenney concerning the possible leak, and Boccia requested that Kenney watch Kelly to determine whether he was the leak.

At some point in January, according to the complaint, the task force began to meet without Kelly present. In response, as alleged in the complaint, Kelly asked Boccia what was wrong and why he, Kelly, had been removed from the decision-making process of the task force. According to the complaint, Boccia just said that nothing was wrong and that Kelly was no longer needed. Later in January, Kelly volunteered to remove himself from the task force and did so. Even in Kelly's absence, the task force officials continued to discuss the security problems, and, according to the complaint, Kelly remained a suspect.

Almost four years later, the DEA learned the true source of the leaks from the Lepere investigation. In November 1984, Richard Kirvan was arrested in New York, and he told the DEA that David Twoomey, a former Assistant United States Attorney, had compromised the Lepere investigation. Twoomey was subsequently tried and convicted of disclosing confidential enforcement information.

Throughout the time relevant in this case, the DEA promulgated an internal security manual which established the intra-agency rules for employee integrity.[1] The purpose of this manual, among other things, was to establish a procedure for investigations by the Office of Internal Security ("OIS"). The manual was struc-

---

1. The government has provided copies of two DEA manuals in its affidavits to this Court. The first manual called the "Internal Security Manual" was drafted in 1979 and remained in effect until 1983. The second manual called the "Planning and Inspection Manual" was drafted in 1983 and incorporated the Internal Security Manual with some minor revisions. The provisions relevant to this case are substantively the same in both manuals. Furthermore, the alleged duty of care arose and nearly all the alleged negligent conduct occurred while the first Internal Security Manual was in effect. Therefore, for purposes of clarity and efficiency, this Court shall only examine the first Internal Security Manual.

tured in three parts: employee responsibilities, management responsibilities, and office of internal security responsibilities.

The manual outlined the DEA policies for reporting violations and complaints to the OIS. For employees, the manuals stated in pertinent part:

8112 REPORTING POSSIBLE VIOLATIONS AND COMPLAINTS

A. Employee Reporting Responsibilities. All DEA employees will promptly report to Regional or Headquarters management officials any activity or situation the employee believes to be improper, illegal, or otherwise in violation of any of the standards of conduct....

B. Employee Reporting Channels. The provisions of Section 8121 concerning matters for resolution by management personnel are pertinent to the employee in determining the proper channel for reporting allegations on complaints. The crucial issue is the good faith of the employee who encounters such situations. Doubts in the mind of the employee as to the proper reporting channels should normally be resolved by reporting the matter through management channels. DEA employees may, at their discretion, report information directly to any DEA Inspector, provided the employee deems the substance of the information to be of an integrity or internal security nature.

For management, the manual had more extensive policies for reporting violations and complaints to the OIS. The manual stated in pertinent part:

8121 REPORTING ALLEGATIONS OR COMPLAINTS TO THE OFFICE OF INTERNAL SECURITY

A. Upon receiving an allegation or complaint which indicates the possible involvement of a DEA employee in any matter described in section 8121.11, Headquarters Office Heads, Regional Directors, Laboratory Directors, or any employee acting in their absence, will:

1. Immediately notify by telephone the Internal Security Field Office having jurisdiction.

2. Document the information by confirming the telephonic report in a memorandum to the appropriate Inspector–in–Charge.

B. To distinguish between those matters requiring reports to the Office of Internal Security for investigation and those which are for management resolution, note that in general:

1. Integrity breakdowns, criminal or civil violations of laws and departmental codes, and instances where public notoriety reach a level detrimental to the DEA or the Department of Justice, must be reported....

2. Conversely, matters such as employee grievances, errors, in judgment, insubordination, job performance and personal conduct deemed unbecoming of a DEA employee are clearly and solely the responsibility of DEA management officials.

In several more provisions, the manual elaborated on which particular matters should be reported to the OIS by management officials. Specifically, in section 8121.11, the manual listed at least twenty definitional categories of matters which must be reported to the OIS. In relevant part, section 8121.11 stated:

*8121.11 Matters Which Must Be Reported to the Office of Internal Security.* Report the integrity and security matters listed herein to [the OIS]. Recognize that the situations or activities described are not all-inclusive. Also report matters related to those listed, which constitute a breach of integrity or improper conduct beyond that for which management sanctions are appropriate, to [the OIS]....

C. Disclosure of official DEA information to any unauthorized person, any person known or suspected to be involved in drug trafficking or any other criminal activity. Examples of such information include, but are not limited to, the following: ...

2. Identifying investigative targets, regardless of the stage of investigation. (emphasis in original)

For the OIS, the manual established a set of guidelines for investigating allegations and complaints which have been reported by employees or management. The manual provided in pertinent part:

8131 EVALUATION OF ALLEGATIONS

A. Each allegation or complaint will be evaluated by the Office of Internal Security to determine if an investigation will be initiated. A full investigation will generally be initiated upon receiving an allegation or complaint which meets the following criteria:

1. An identified source, who reports apparently accurate information, alleges or complains that

2. An identified DEA employee or another individual

3. Has committed a violation that falls within the investigative responsibility and jurisdiction of the Office of Internal Security.

In those situations where one of the above criterion is not met, a preliminary investigation will be conducted to determine if the facts will substantiate the missing or doubtful element....

B. The decision to proceed with or discontinue an investigation will rest with the Chief Inspector or his designee, subject to post review by the Administrator.

In counts one and four of the complaint, Kelly alleges that Stutman and Boccia violated policies in the DEA internal security manual. Specifically, Kelly asserts in the complaint that Stutman and Boccia failed to report to the OIS any allegations or complaints that Kelly was the leak in the Lepere investigation. Beyond the allegations in the complaint, however, Kelly has not submitted any affidavits or evidence in support of his complaint.[2]

According to affidavits filed by the United States, neither Stutman nor Boccia were aware of any specific factual information which might have indicated that Kelly was the source of the leaks. For this reason, according to the affidavits, neither Boccia nor Stutman ever reported any allegations concerning Kelly to the OIS. According to the affidavits, Stutman and Boccia did have a number of telephone consultations with officials in the OIS about the security problems in the Lepere investigation. In fact, according to the affidavits, the OIS conducted an investigation of another DEA Special Agent on the task force who was subsequently cleared of any alleged wrongdoing. It is clear, however, from the uncontested facts that neither Stutman nor Boccia reported any complaints against Kelly to the OIS.

II.

The first issue presented in this case is whether this Court properly substituted the United States as a defendant and dismissed the individual defendants. The FTCA allows a suit against the government only for personal injuries caused by an "employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b). In 1988, Congress amended the FTCA to require the substitution of the United States as a defendant for an individual defendant where the government employee was acting within the scope of employment. Federal Employees Liability Reform and Tort Compensation Act of 1988, P.L. No. 100–694 §§ 5, 6, 102 Stat. 4564 (codified as amended at 28 U.S.C. §§ 2679(b), 2679(d)). See H.R.Rep. No. 700, 100th Cong., 2d Sess. 6–7, reprinted in, 1988 U.S.Code, Cong. & Admin.News 5945, 5949–50. In relevant part, the amendment provided that:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States ... and the United

---

**2.** This Court also notes with disfavor that Kelly has not even filed a statement of disputed facts in response to the government's motion for summary judgment. Under Local Rule 18, "[o]ppositions to motions for summary judgment shall include a concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried...."

States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).

Under the FTCA, the issue of whether an employee was acting within the scope of employment is governed by the law of the state where the alleged negligent act occurred. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam). *See also Doggett v. United States*, 875 F.2d 684, 687 (9th Cir.1988); *Nelson v. United States*, 838 F.2d 1280, 1282–83 (D.C.Cir.1988); H.R. Rep. No. 700, 100th Cong., 2d Sess. 5–6, *reprinted in*, 1988 U.S.Code, Cong. & Admin.News 5945, 5949. In Massachusetts, the "conduct of an agent is within the scope of employment if it is of the kind he is employed to perform, ...; if it occurs substantially within the authorized time and space limits, ...; and if it is motivated, at least in part, by a purpose to serve the employer." *Wang Laboratories, Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 859, 501 N.E.2d 1163 (1986) (citations omitted). *See also Howard v. Burlington*, 399 Mass. 585, 589–90, 506 N.E.2d 102 (1987). Further, courts have not construed the scope of employment restrictively in Massachusetts. *Howard*, 399 Mass. at 590, 506 N.E.2d 102; *Commonwealth v. Jerez*, 390 Mass. 456, 462, 457 N.E.2d 1105 (1983).

On March 30, 1989, this Court dismissed the individual defendants pursuant to 28 U.S.C. § 2679(d)(1) as amended by P.L. No. 100–694. The government had presented a certification by the Attorney General that Stutman and Boccia were acting in the scope of their employment, and the government had argued that this certification in combination with the recent passage of P.L. No. 100–694 precluded all judicial review concerning the substitution of the United States as a defendant. On November 29, 1989, in light of newly discovered legislative history, the government filed a supplemental memorandum withdrawing their arguments originally made based on P.L. No. 100–694. Following these developments, the plaintiff Kelly moved for reconsideration of the Court's order.

In moving for reconsideration, Kelly initially argues that the certification from the Attorney General does not foreclose all judicial review of the scope of employment question. Further, upon review of the facts, Kelly claims that Stutman and Boccia were acting beyond the scope of their employment in not referring allegations to the OIS, and thus the Court erred in dismissing claims against the individual defendants. While the former argument has merit, the latter argument does not.

A careful analysis of section 2679(d) does not suggest that an Attorney General's certification as to scope of employment should preclude all judicial review of decisions to substitute the United States as a defendant for individual government employees. First, while the plain language of section 2679(d)(1) mandates the substitution of the United States as a defendant upon certification by the Attorney General, the overall construction of section 2679(d) clearly allows for some judicial review of the Attorney General's scope of employment certifications. 28 U.S.C. § 2679(d). Section 2679(d)(3) expressly provides that a government employee may challenge the Attorney General's refusal to certify scope of employment and may petition a United States district court for judicial review. 28 U.S.C. § 2679(d)(3). Given this express provision allowing judicial review for individual defendants, this Court would be hard pressed to read the plain language of 28 U.S.C. § 2679(d)(1) to implicitly bar judicial review of certifications by potential plaintiffs.

Second, the legislative history of section 2679(d) demonstrates that Congress did not intend that potential plaintiffs be barred from challenging the Attorney General's scope of employment certifications. In a hearing on the proposed FTCA amendments, Deputy Attorney General Frank L. Willmore, who appeared representing the Justice Department, had the following exchange with Representative Barney Frank concerning the specific provisions which became section 2679(d):

Mr. FRANK: What about their objection to the certification?

Mr. WILLMORE: I think the certification is the easiest way to get the scope issue resolved *without having the potentially years of litigation over whether an act was within scope.* I do not know what their alternative approach is.

Mr. FRANK: Litigation by whom?

Mr. WILLMORE: Litigation maybe by the plaintiff. Maybe the plaintiff wants to sue the employee.

Mr. FRANK: Well, but the plaintiff can still contest the certification, could he not?

Mr. WILLMORE: Yes.

Mr. FRANK: I mean that is not going to void the litigation. It seems to me the certification is a weapon against the employee, not against the plaintiff, because the plaintiff would still have the right to contest the certification if they thought the Attorney General were certifying without justification.

*Hearing Before the Subcommittee on Administrative Law and Governmental Relations of the Committee on the Judiciary, House of Representatives,* 100th Cong., 2d Sess. 128 (1988).

Willmore later confirmed Rep. Frank's conclusion in a discussion with Rep. Benjamin L. Cardin.

Mr. CARDIN: One of the problems we might have is you might issue a certification and later find out that the facts are such that [a government employee] was not acting within the scope of his employment.

Mr. WILLMORE: Yes. But Chairman Frank is correct that a plaintiff can challenge that certification. So that would be reviewable by a court at some point, probably by a Federal District Court.

*Id.* at 133.[3] In light of this legislative history, as well as the statutory construction noted above, section 2679(d) does not bar judicial review of a plaintiff's challenge to the Attorney General's certification of scope of employment.

■ Turning to the facts of this case, a careful review of the Attorney General's scope of employment certification reveals

no error. Applying the state law rules of respondeat superior, as noted above, the alleged negligent conduct by Stutman and Boccia was within their scope of employment. The alleged wrongful conduct was a failure to report allegations against Kelly to the OIS. Stutman and Boccia were Kelly's supervisors at the DEA Boston office, and, as alleged in the complaint, are being sued in their capacity as DEA employees. Further, the alleged wrongful conduct occurred within their time and office as DEA employees. In fact, Kelly alleges that Stutman and Boccia violated certain internal security regulations *which only apply to DEA employees,* and Kelly alleges no wrongful conduct falling outside Stutman's or Boccia's jobs as DEA supervisors. As such, there can be no question that Stutman and Boccia are being sued for alleged wrongful conduct within the scope of their employment, and the Attorney General's certification is clearly supported by undisputed facts in this case. Consequently, Kelly's motion for reconsideration should be denied.

### III.

The next issue presented in this case is whether this Court has subject matter jurisdiction over this action. The FTCA acts as a limited waiver of sovereign immunity by the United States government. The FTCA generally grants jurisdiction in United States District Court to sue the government

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The FTCA also includes a number of exceptions to this waiver of sovereign im-

---

**3.** The position that plaintiffs may challenge scope of employment certifications was reiterated by Rep. Frank in later discussions during the same hearings. *See id.* at 197.

munity. 28 U.S.C. § 2680(a–n). In the exception relevant to this case, the FTCA provides that the grant of jurisdiction shall not apply to

> [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984). "If a discretionary function was involved, the fact that critical factors were not considered or that the decision was negligently made will not bring the challenged conduct outside of the exception." *Ayer v. United States*, 902 F.2d 1038, 1041 (1st Cir.1990) (citing *Dube v. Pittsburgh Corning*, 870 F.2d 790, 797 (1st Cir.1989)).

■ The Supreme Court has identified several factors in analyzing whether the discretionary function exception applies. First, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. In examining this first factor, a court must "consider whether the action is a matter of choice for the acting employee." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). "[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function to protect." *Id.*

Second, "assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of a kind that the discretionary function was designed to shield." *Id.* The discretionary function exception expresses a congressional intent to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2764. "The exception properly construed, therefore protects only governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959.

■ Turning to this case, the government argues that Kelly's claims for negligent investigation of the leaks in the Lepere investigation are barred by the discretionary function exception. Specifically, the government argues that reporting allegations or complaints against DEA agents to the OIS involves choice and judgment, and Congress did not intend such internal security policy judgments to be the subject of tort actions. In response, Kelly asserts that the internal security manual provides no discretion for management in reporting allegations or complaints of disclosing confidential DEA information. As such, Kelly argues that the discretionary function exception does not apply in this case. After careful review of the internal security manual, the government's argument is persuasive.

To begin, the manual creates a general procedure for reporting internal security problems applicable to all DEA employees. The manual states that employees must report "any activity or situation the employee believes to be improper, illegal, or otherwise in violation of the standards of conduct." The manual also provides that an employee must consider the management policies and use their "good faith" in deciding how to report the violations. Further, an employee "may, at their discretion, report information" to a DEA Inspector "provided the employee deems the substance to be of an integrity or internal security nature." The manual does not provide any further guidelines or definitions specifying the parameters of this general employee responsibility.

Applying the factors announced by the Supreme Court, a DEA employee's conduct in deciding whether to report an internal security problem is clearly protected under the discretionary function exception. First, the language of the manual clearly suggests that employees must exercise their judgment in deciding which activities should be reported and to whom the reports should be made. An employee must only report activities he or she "believes" to be improper or illegal. An employee must make a "good faith" judgment in deciding where to report violations and complaints. Further, the employee must use "their discretion" in evaluating the substance of the activity and how to report the activity. In this context, it is clear that an employee's decision whether to report is an exercise of their discretion.

Second, a DEA employee's judgment as to what incidents to report and how to report them involves basic public policy considerations. The DEA and its employees have substantial interests in maintaining internal and public integrity. The DEA, as an international law enforcement agency, conducts complex and often confidential investigations. Breaches of integrity may harm the success of these investigations and even threaten the security of individual agents. The DEA also needs to promote public confidence in the integrity and dependability of the agency. Where accusations may be made against the DEA or its agents, the DEA needs a mechanism to resolve promptly and fairly any internal security problems. The internal security manual and its reporting policies respond to these fundamental policy concerns. A DEA employee, in exercising judgment under those policies, also decides fundamental issues of policy concerning internal and public integrity. In sum, the reporting of internal security problems by DEA employees is a discretionary function protected from suit by 28 U.S.C. § 2680(a).

Turning to the responsibility for supervisors, the manual creates a more specific procedure for reporting internal security allegations and complaints applicable to DEA management. The manual requires that DEA management should make reports to the OIS "[u]pon receiving an allegation or complaint which indicates the possible involvement of DEA employee in [an internal security problem]." Further, the manual provides guidelines for management "[t]o distinguish between those matters requiring reports to the Office of Internal Security for investigation and those which are for management resolution...." In making these assessments, the manual provides further definitions and criteria for determining which matters should be reported and which matters will be investigated by the OIS.

The provision most relevant to this case is section 8121.11 of the manual. Within the context of the manual, section 8121.11 appears as a definitional list of different possible internal security matters. Specifically, part C(2) of section 8121.11 states that "[d]isclosure of official DEA information to ... any person known or suspected to be involved in drug trafficking" is a matter which must be reported to the OIS.

Again applying the Supreme Court factors, a DEA supervisor's conduct in evaluating what allegations and complaints to report are similarly protected by the discretionary function exception. First, the reporting policies for management requires the exercise of judgment and choice by supervisors. DEA supervisors must decide whether "an allegation or complaint" involves an internal security problem which should be reported to the OIS or whether the matter should be handled internally. Because of this inherently discretionary task, the manual has provided guidelines and criteria for determining which matters to report and which not to report. In making this decision, the supervisor must review the definitional list in section 8121.11 to see whether any provisions are applicable.[4] Further, management implicitly has

---

4. The fact that a particular situation may be covered by section 8121.11 and, therefore, must be reported to the OIS does not eliminate the discretionary nature of the choice to be made by DEA supervisors. Section 8121.11 does not alter the overall procedure for reporting certain allegations or complaints to the OIS and not others. Nor does section 8121.11 eliminate the

to assess whether the allegation or complaint satisfies the established criteria necessary to initiate an OIS investigation.[5] Therefore, a DEA supervisor's decision whether to report an allegation or complaint to the OIS is a product of their discretion.

The reporting policies for management also involve public policy judgments. As noted above, all DEA employees are acting under the manual to protect the internal and public integrity of the DEA. In addition, supervisors have special policy judgments both in managing their investigations and supervising DEA agents. Supervisors must consider employee relations, individual job performance, and departmental resources in deciding what complaints to report and which not to report. Furthermore, supervisors must pay particular attention to the confidentiality of investigations and the safety of particular agents under their direct supervision. In light of the Supreme Court factors discussed above, the reporting of internal security problems by DEA management is a discretionary function protected from suit by 28 U.S.C. § 2680(a).[6]

In conclusion, any conduct by Stutman or Boccia, as DEA employees or supervisors, in failing to make reports to the OIS was a

discretionary act involving choice and policy judgment. Thus, the discretionary function exception of the FTCA divests this Court of subject matter jurisdiction to hear Kelly's remaining claims. This exception applies whether or not Stutman and Boccia were negligent in exercising their discretion under the internal security manual. *See* 28 U.S.C. § 2680(a) (the exception applies "whether or not the discretion involved be abused."). Since this Court has no subject matter jurisdiction, there are no genuine issues of material fact for adjudication and summary judgment is appropriate. For all these reasons, the government's motion for summary judgment on counts one and four should be granted.

Order accordingly.

---

judgment which management must employ in determining whether parts of section 8121.11 apply to any given circumstance.

5. Under the OIS responsibilities, the manual states that a full investigation will be conducted only where "an identified source" reports "accurate information" about "an identified DEA employee" and the matter is within the jurisdiction of the OIS. While these criteria appear within the section for OIS responsibilities, this Court recognizes that it is reasonable to infer that management has some responsibility for and knowledge of the OIS aspects of the internal security investigative procedure. Furthermore, the government has filed unopposed affidavits by DEA officials stating that it was policy within the DEA to evaluate these OIS criteria before deciding to make an official report to the OIS.

6. In the complaint, Kelly has not specifically asserted any further claims of negligence on the part of Boccia or Stutman. It is conceivable, however, that Kelly could claim that the DEA, as a federal agency, was negligent in drafting the particular procedures and provisions in the DEA internal security manual. This Court

notes that any such claims would also be barred by the discretionary function exception.

The internal security manual is promulgated under the broad statutory authority given to each executive department to prescribe regulations for the conduct of employees. 5 U.S.C. § 301. In relevant part, section 301 provides:
The head of an Executive Department ... may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.
5 U.S.C. § 301. In light of the factors noted by the Supreme Court, the specific content of internal security policies is a matter of choice delegated by statute to the executive of the Department of Justice, and the internal security policies involve numerous public policy judgments concerning the best procedure for protecting the security interests of the DEA. Thus, any conduct by the DEA in drafting the provisions of the internal security manual are immune from suit under the FTCA.