John L. KELLY, Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 90–1546.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1990.

Decided Jan. 17, 1991.

William A. Brown, Boston, Mass., for plaintiff, appellant.

George B. Henderson, II, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for defendant, appellee.

Before BREYER, Chief Judge,
BROWN *, Senior Circuit Judge, and
SELYA, Circuit Judge.

* Of the Fifth Circuit, sitting by designation.

SELYA, Circuit Judge.

Plaintiff-appellant John L. Kelly appeals from rulings of the United States District Court for the District of Massachusetts substituting the United States as the sole party defendant herein and thereafter granting summary judgment in its favor. Although Kelly's plight engenders some sympathy, we have no principled choice but to affirm.

## BACKGROUND

Approximately a decade ago, the federal Drug Enforcement Administration (DEA) and other law enforcement agencies formed a Boston-based task force to investigate the activities of Frank Lepere, a suspected drug kingpin. For nearly four years the investigation was hampered by leaks. DEA eventually learned in late 1984, and soon proved, that a quondam federal prosecutor, one David Twomey, was the wellspring of the profluent stream of surreptitious information. We previously told the tawdry tale of Twomey's treacherous tattling in *United States v. Twomey*, 806 F.2d 1136 (1st Cir.1986), and it would be pleonastic to hawk the story anew.

Robert Stutman was the bureau chief in DEA's Boston office during the time frame relevant to this appeal. Carlo Boccia was his deputy. Kelly, a veteran DEA agent, believed it to have been widely whispered before Twomey's apprehension that he (Kelly) was the source of the seepage. Alleging that his career was ruined by the persistent rumors, notwithstanding their falsity, Kelly invoked the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–80, and sued the government, Stutman, and Boccia. Plaintiff theorized that, if Stutman and Boccia had gone through channels and promptly reported the scurrilous gossip to DEA's Office of Internal Security (OIS),[1] his name would have been more expeditiously cleared, his career salvaged, and his mental anguish eased. He

sought damages "result[ing] from the conduct of defendants in failing to follow their own regulations relative to investigating allegations of misconduct by agents under their direction and control." Complaint ¶ 1.

The district court was unimpressed. After the government certified in writing that the challenged conduct took place within the scope of the individual defendants' employment as federal officers, the court dropped Stutman and Boccia as parties, substituted the United States in their stead, and simultaneously dismissed two counts of the complaint as barred by the FTCA's defamation exemption, 28 U.S.C. § 2680(h).[2] *Kelly v. United States*, C.A. No. 87–1100–C (D.Mass. Mar. 30, 1989) (unpublished order). More than a year later, the court, on Kelly's motion for reconsideration, affirmed the substitution. It also granted the government's motion for summary judgment on the two remaining counts. *Kelly v. United States*, 737 F.Supp. 711 (D.Mass.1990).

In this appeal, Kelly advances a pair of contentions: (1) the United States was incorrectly substituted for the individual defendants, and (2) there was a triable issue of fact which should have precluded reliance on the FTCA's discretionary function exception as a basis for *brevis* disposition.

## SUBSTITUTION OF PARTIES

In 1988, the FTCA was amended by the Federal Employees' Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694 §§ 5, 6, 102 Stat. 4564, to require substitution of the United States for an individual defendant where the latter was sued by reason of acts or omissions occurring within the scope of his or her federal employment. In relevant part, the FTCA now reads:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident

---

1. The complaint also mentioned DEA's Office of Professional Responsibility, OIS' successor in the DEA scheme of things. The change in name is irrelevant for the purposes at hand. Accordingly, we shall refer to these offices, interchangeably, as OIS.

2. Kelly has not contested the dismissal of these counts on appeal.

out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).

In this case, the government filed the scope certificate in proper form. The district judge recognized his obligation to treat the scope certificate as non-conclusive, thereby anticipating our holding in *Nasuti v. Scannell,* 906 F.2d 802, 812–14 (1st Cir.1990). Under the FTCA, the next question—the scope of employment—called into play the law of the state where the alleged negligence occurred. *See Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam); *Doggett v. United States,* 875 F.2d 684, 687 (9th Cir.1988); *Nelson v. United States,* 838 F.2d 1280, 1282–83 (D.C.Cir.1988); H.R.Rep. No. 700, 100th Cong., 2d Sess. 5, *reprinted in* 1988 U.S. Code Cong. & Admin.News 5945, 5949.

In Massachusetts, the "conduct of an agent is within the scope of employment if it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer." *Wang Laboratories, Inc. v. Business Incentives, Inc.,* 398 Mass. 854, 859, 501 N.E.2d 1163, 1166 (1986) (citations omitted). Stutman's and Boccia's claimed behavior fell well within this spacious encincture. Although appellant fulminates that his superiors did not deserve the benefit of this taxonomy because their misconduct was "blatant" and "egregious," he offers no persuasive reason to believe that Massachusetts, in gauging the scope of employment, would carve out such a broad exception. More critical still, there are no documented facts contained in the record justifying the use of so pejorative a set of adjectives. Rhetoric, unsupported by facts, remains only rhetoric, even if stridently proclaimed.

We need not paint the lily. The district court ably explored this issue and disposed

of it convincingly. We uphold the individual defendants' dismissal, and their replacement by the sovereign, for substantially the reasons elucidated below. *See Kelly,* 737 F.Supp. at 714–16.

## THE SUMMARY JUDGMENT STANDARD

■ Before tackling plaintiff's claim that his case against the government should have proceeded to trial, we pause to retrace the familiar contours of Fed.R.Civ.P. 56.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To be sure, the record must be read in light most amiable to the summary judgment opponent and all reasonable inferences must be drawn in that party's favor. *See, e.g., Amsden v. Moran,* 904 F.2d 748, 752 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1990); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). Yet, even that prophylactic formulation does not allow a party confronted by a Rule 56 motion to coast.

Once the movant avers "an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the latter must establish the existence of at least one issue that is both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Garside,* 895 F.2d at 48. In so doing, the nonmovant may not rest upon mere allegations in, say, an unverified complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make out the requisite issue of material fact. *See Garside,* 895 F.2d at 50 (listing cases); *see also* Fed.R.Civ.P. 56(e). Proof based on arrant speculation, optimistic surmise or farfetched inference will not suffice. *See Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989); *Medi-*

na–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). By the same token, "evidence [that] is merely colorable, or [ ] not significantly probative" cannot impede an otherwise deserved summary disposition. See Anderson, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citation omitted).

## DOCUMENTING ISSUES OF FACT

■ The conventional means of documenting issues of fact to avoid summary judgment is by affidavit. See, e.g., Fed.R. Civ.P. 56(b)-(c), (e)-(g). The government's motion was bulwarked by four affidavits. Kelly filed none in opposition. Nor did he produce "depositions, answers to interrogatories, and admissions," Fed.R.Civ.P. 56(c), to show that an issue of fact existed.

Kelly also abjured a further step which must be taken in a district like Massachusetts if a summary judgment opponent desires to protect the record. The district court's local rules provide in relevant part:

Motions for summary judgment shall include a concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.... Oppositions to motions for summary judgment shall include a concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.... Material facts set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.

D.Mass.Loc.R. 18. In this instance, notwithstanding that the government's motion was accompanied by the contemplated statement of undisputed facts (Statement), appellant forsook a counterstatement, choosing instead to rest his case on the bare allegations in the complaint.

In the precincts patrolled by Rule 56, the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence. This case is no exception. Given appellant's failure to contest either the government's affidavits or the Statement, the jurisprudence of both Rule 56 and Local Rule 18 demands that the movant's version of the facts be taken as true.

Of course, the district court was still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate. See Mendez v. Banco Popular, 900 F.2d 4, 7 (1st Cir. 1990); Jaroma v. Massey, 873 F.2d 17, 19–20 (1st Cir.1989) (per curiam); see generally Amsden, 904 F.2d at 753 (court of appeals may reverse a grant of summary judgment, regardless of uncontroverted nature of facts, if "the district court erred in expounding the law"). We turn, then, to the merits, pausing first to set in place the intradepartmental regulation which appellant alleges was ignored to his detriment.

## THE REGULATIONS

The two counts of Kelly's complaint with which we are concerned arise out of a common claim, centering around his superiors' ostensible neglect to comply with internal regulations. We have set out in an appendix the most directly relevant portions of DEA's departmental manual (Manual).[3] The critical section, entitled "Reporting Allegations or Complaints to the [OIS]," instructed bureau chiefs and their deputies that, "[u]pon receiving an allegation or complaint which indicates the possible involvement of a DEA employee" in any matter compromising an official investigation or involving the unauthorized disclosure of confidential DEA information, they "will [i]mmediately notify ... the Internal Security Field Office having jurisdiction." Manual § 8121(A)(1).

## THE STATE OF THE RECORD

The parties agree that no rumors about Kelly's status as the possible source of the

---

**3.** The DEA's "Internal Security Manual" was supplanted in 1983 by an updated "Planning and Inspection Manual." Since the latter incorporated the former almost verbatim, see Kelly, 737 F.Supp. at 712, we do not distinguish between them. In neither version was the term "allegation or complaint" further defined.

leaks were ever reported to OIS by Stutman or Boccia. In addition the summary judgment record revealed the following:

1. Stutman's affidavit said that, during the period of the leaks:

> While the names of the various members of the Task Force were discussed as possible sources of the leaks, I never was made aware of any factual information which would support an allegation against John Kelly.
>
> . . . .
>
> ... I did not refer any allegations against him to [OIS] ... because I had no factual information suggesting that he had engaged in any improper or illegal conduct.

2. Boccia filed a similar affidavit, stating that, during the same period, he was never

> ... made aware of any factual information suggesting or indiccating [sic] that John Kelly was the source of leaks to Lepere. It is true that the names of the various members of the Task Force were discussed as possible sources of the disclosure; however, I was never made aware of any factual information which would support an allegation against John Kelly. Therefore, I did not request that [OIS] ... conduct an investigation with regards to John Kelly.

3. Both Stutman and Boccia set forth their understanding that the reporting of unsubstantiated rumors to OIS lay within their discretion.

4. The government also filed the affidavit of Joseph Krueger, OIS' former chief inspector. Krueger related that, during

the relevant time frame, regional management personnel (such as Stutman and Boccia) were expected to "use their good judgment in determining whether [rumored] information was of sufficient reliability to warrant reporting." Another ranking OIS official of that era, Philip Fisher, signed a similar affidavit.[4]

5. The Local Rule 18 filing related that before Twomey's perfidy was unmasked neither Stutman nor Boccia was "aware of any factual information suggesting or indicating that plaintiff Kelly was the source of the leaks." Statement ¶¶ 5, 6. The Statement also confirmed DEA's policy that regional administrators were required to make reports to OIS "only if there was apparently reliable factual information indicating that a particular employee had engaged in ... illegal conduct." *Id.* ¶ 7.

As previously mentioned, appellant did not see fit to contradict these facts in any meaningful way.[5] Thus, the district court was bound by them in passing upon the Rule 56 motion. On appeal, we are similarly constrained.

## THE DISCRETIONARY FUNCTION EXCEPTION

■ The FTCA is a broad waiver of federal sovereign immunity. It grants jurisdiction to federal district courts to hear many tort suits against the United States in circumstances where the government, if a private party, would have incurred liability under state law. *See* 28 U.S.C. § 2674. There are, however, statutory exceptions, among them a proviso that the waiver shall not extend to:

---

**4.** Krueger stated, and Fisher confirmed, that regional managers were expected to apply the same criteria in deciding whether to transmit information to OIS that OIS itself used in determining whether to initiate an investigation upon receipt of a transmitted allegation or complaint, viz.:

> 1. Is there an identified source, who reports apparently accurate information?
> 2. Does the report pertain to an identified DEA employee or other individual?
> 3. Has the subject committed a violation that falls within OIS' investigative responsibility and jurisdiction?

Insofar as initiating investigations, these criteria were embodied, in substance, in the regulations. *See* Manual § 8131(A).

**5.** The averments contained in plaintiff's unverified complaint cannot be used to call these facts into question. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). When a claim is covered by the discretionary function exception, it must be dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1346(b); *see also Irving v. United States,* 909 F.2d 598, 600 (1st Cir.1990).

A two part test is used to determine whether the challenged conduct falls within the exception. *See Ayer v. United States,* 902 F.2d 1038, 1042 (1st Cir.1990). On the first furcula, we look to "the nature of the conduct, rather than the status of the actor," *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984), conducting our tamisage in the context of "whether the action is a matter of choice for the acting employee." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988). If this journey is successfully accomplished, we then "must determine whether that judgment is of the kind that the discretionary function was designed to shield." *Id.*

Turning to the nature of what Stutman and Boccia are alleged to have done (or, postured precisely for present purposes, failed to do), Kelly notes the use of terms such as "will" and "must" in the regulations, *see, e.g.,* Manual § 8121(A)(1) (upon receiving allegation or complaint, bureau chiefs "will [i]mmediately notify" OIS); *id.* § 8121(B)(1) (integrity breakdowns "must be reported to [OIS] for investigative determination"), and asserts that these references place the reporting obligation outside the ambit of 28 U.S.C. § 2680(a). *See Berkovitz,* 486 U.S. at 536, 546, 108 S.Ct. at 1964 (the discretionary function exception does not apply if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" or if "the acts complained of do not involve the permissible exercise of policy discretion"); *Ayer,* 902 F.2d at 1042 n. 1 (*"Berkovitz* held that a mandatory regulation or policy could remove discretion [under the

FTCA]."). He claims, therefore, that the text of the regulations constituted sufficient evidence to make out a triable question anent his superiors' discretion to refrain from reporting the rumors. The district court disagreed. So do we.

We recently wrote that, in regard to the first part of the discretionary function test, "the proper inquiry must center on the amount of discretion actually held and exercised by the government employees whose actions or omissions are at issue." *Irving,* 909 F.2d at 602. Here, the record reveals without contradiction that (1) DEA officials consistently regarded regional managers as possessing discretion in handling unsubstantiated rumors, and (2) such discretion was actually and consistently exercised at the regional level. Kelly, a veteran agent, could have contested this interpretation of the regulations by evidence of contrary practice, but offered none. Instead, he relied solely on the letter of the regulations—language which, while perhaps suggestive, was at the very least a mixed bag, interweaving imperatives with weaker, precatory verbs and generalities more characteristic of discretion than of mandatory directives. Standing alone, this was not enough. *Cf., e.g., Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514 (ordinarily, a "plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment").

To be sure, the case could be different were the language as unbending as appellant suggests. A regulation which straightforwardly strips all discretion might well be beyond the reach of 28 U.S.C. § 2680(a), even if ignored in practice. But, Manual § 8121 is of a less categorical stripe. Although words like "will" and "must" are generally of mandatory effect, they may have other meanings and may be used, as here, in merely a directory sense. *See, e.g., Sierra Club v. Train,* 557 F.2d 485, 488–90 (5th Cir.1977) (use of "shall" in prescribing discretionary duty). Moreover, both the heading of section 8121 and its lead sentence indicate that the prescribed obligations are triggered only when the DEA official in question receives "an

allegation or complaint" concerning an employee. Although neither noun is defined in the Manual, we believe that, under common usage, it was permissible for the agency to interpret "allegation" and "complaint" as not encompassing mere buzznacking. Put another way, reading the words as giving DEA's regional managers discretion to determine what comprised an "allegation" or "complaint" was a plausible rendition of the overall text, well within the purview of the regulation.

Not only universal practice but common sense supports such an interpretation. "It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." 2A Sands, Sutherland Stat. Const. § 45.12 at 54 (4th ed. 1984–85); *see also United States v. Meyer,* 808 F.2d 912, 919 (1st Cir.1987). This prudential canon of construction holds equally true of agency regulations. *See* 1A Sands, *supra,* § 31.06 at 532 ("When a regulation is legislative in character, rules of interpretation applicable to statutes should be used in determining its meaning."). If the Manual were read to mandate that every bit of idle gossip intimating employee misconduct had to be reported, it would constitute an open invitation to drug traffickers to make baseless claims against DEA agents. The legitimate business of the agency would grind to a halt, its limited resources diverted to the needless investigation of its own agents rather than the war against drugs.[6] Within the textual framework of Manual § 8121, the regulation cannot plausibly have the inflexible meaning which Kelly ascribes to it; to the contrary, reading the regulation as conferring discretion on regional officials, expecting them to separate wheat from chaff, seems far more consistent with the regulatory framework. *Cf.* 2A Sands, *supra,* § 45.12 at 54 ("an interpretation [of a statute or regulation] that would overtax enforcement machinery is disfavored as unreasonable"); Lydgate, *Minor Poems* (1430) ("He is a foole that yevithe also credence To newe rumours and every foltisshe fable.").

To sum up, language allows, and logic dictates, that we accept Krueger's and Fisher's uncontradicted version of what the regulations mean and how they work in practice. After all, an agency's interpretation of its own regulations is entitled to substantial deference and will ordinarily be accorded controlling weight unless clearly erroneous. *See, e.g., Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Cheshire Hospital v. New Hampshire–Vermont Hospitalization Service, Inc.,* 689 F.2d 1112, 1117 (1st Cir.1982). Here, where the text in dispute is an internally-drafted, self-regulatory document, there is simply no reason for us to reject the uncontroverted evidence of DEA officials that section 8121 has uniformly been read as giving regional management personnel discretion over whether to report whispered hints of employee misconduct to OIS absent any semblance of a factual foundation.[7] The first part of the Court's bipartite test was satisfied.

In this case, the second furcula of the test poses no substantial problem. The discretionary function exception "prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded

---

**6.** In this case, for example, the uncontradicted evidence is that the names of all the members of the Task Force were discussed as possible sources of the leaks. *See supra* at pp. 358–359. Thus, if Kelly's position is correct, Stutman and Boccia would have been obliged, despite the absence of any vestige of factual support, to ask OIS to investigate each and every person working on the Lepere file. To extend the argument to its logical extreme is to reveal quite plainly its untenableness.

**7.** Indeed, for purposes of the government's summary judgment motion, Kelly in a very real sense conceded that this reading was correct and that bureau chiefs were required to report fleeting rumors only if accompanied by "apparently reliable factual information." *See* Statement ¶ 7; *see also* D.Mass.Loc.R. 18 (discussing legal effect of failure to controvert material facts contained in Statement).

in social, economic, and political policy through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2765. Consequently, proper construction of the exception must protect such judgment calls. Since decisions to investigate, or not, are at the core of law enforcement activity, the bureau chiefs' challenged conduct involved precisely the kind of policy-rooted decisionmaking that section 2680(a) was designed to safeguard. The DEA's mission can be effectively served only if the agency is free to balance its need for internal security against its need to prevent the squandering of scarce resources in the endless chasing of wild geese. Hence, eliminating tort liability in connection with internal security matters fulfills the principal purpose of the discretionary function exception by "protect[ing] governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959.

## CONCLUSION

We need go no further.[8] The order substituting the United States as the sole party defendant was unarguably correct. The FTCA applies. In that context and given the one-sided record, the district court appropriately concluded that a regional manager's decision not to deluge OIS with a tsunami of unsubstantiated rumors "involve[d] an element of judgment or choice," *id.* at 536, 108 S.Ct. at 1958, of the type protected by the FTCA's discretionary function exception. Because the regulations at issue allowed the DEA to determine if a factually unsubstantiated rumor rose to the stature of an "allegation or complaint" for reporting purposes, 28 U.S.C. § 2680(a) barred maintenance of plaintiff's claims.·

*Affirmed.*

**8.** We note, but need not reach, another glaring deficiency in plaintiff's case. Under Massachusetts law, negligence, to be actionable, must proximately cause injury. *See, e.g., Swift v. United States*, 866 F.2d 507, 509 (1st Cir.1989) (discussing causation requirement; listing representative Massachusetts cases). Here, there is uncontradicted evidence, as per the Krueger

## APPENDIX

## INTERNAL SECURITY MANUAL

## DRUG ENFORCEMENT ADMINISTRATION

CHAPTER 81   EMPLOYEE INTEGRITY

Subchapter 812 Management Responsibilities

8121 REPORTING ALLEGATIONS OR COMPLAINTS TO THE OFFICE OF INTERNAL SECURITY

A. Upon receiving an allegation or complaint which indicates the possible involvement of a DEA employee in any matter described in subsection 8121.11, Headquarters Office Heads, Regional Directors, Laboratory Directors, or any employee acting in their absence, will:

1. Immediately notify by telephone the Internal Security Field Office having jurisdiction.

2. Document the information by confirming the telephonic report in a memorandum to the appropriate Inspector-in-Charge.

B. To distinguish between those matters requiring reports to the Office of Internal Security for investigation and those matters which are for management resolution, note that in general:

1. Integrity breakdowns, criminal or civil violations of laws and departmental codes, and instances where public notoriety reach a level detrimental to DEA or the Department of Justice, must be reported to IN investigation.

2. Conversely, matters such as employee grievances, errors in judgment, insubordination, job performance and personal conduct deemed unbecoming of a DEA employee are clearly and solely the responsibility of DEA management officials.   * * *

and Fisher affidavits, that even if Stutman and Boccia had alerted OIS to the rumors, no investigation would have been mounted (because of the paucity of specific facts, *see supra* note 4). Thus, it is surpassingly difficult to conceive how Stutman's and Boccia's alleged omissions, even if tortious, could be said to have proximately caused the harm of which appellant complains.

3. Equal Employment Opportunity (EEO) discrimination complaints will be submitted to the EEO Officer or an EEO counselor.

\*     \*     \*     \*     \*     \*

## 8121.1 DEA EMPLOYEE INTEGRITY MATTERS OF INTERNAL SECURITY INTEREST

*8121.11 Matters Which Must Be Reported to the Office of Internal Security.* Report the integrity and security matters listed herein to IN. Recognize that the situations or activities described are not all-inclusive. Also report matters related to those listed, which constitute a breach of integrity or improper conduct beyond that for which management sanctions are appropriate, to IN.

A. Sale, purchase, possession or otherwise unauthorized disposition of any narcotic or dangerous drug by any employee of DEA.

B. Tampering with or unauthorized removal from official custody of any evidence purchased, seized, or otherwise in the possession of any employee of DEA.

C. Disclosure of official DEA information to any unauthorized person, any person known or suspected to be involved in drug trafficking or any other criminal activity. Examples of such information include, but are not limited to, the following:

1. Identifying confidential sources of information.

2. Identifying investigative targets, regardless of the stage of investigation.

3. Identifying defendants prior to arrest.

4. Identifying undercover agents, regardless of their official affiliation.

5. Classified information.

D. Disclosure to any unauthorized person of industrial trade secrets or confidential business information developed during official activities.

E. Participating in unauthorized or illegal searches of premises, automobiles or persons, arrests, electronic intercepts, or use of excessive force.

F. Soliciting or accepting any bribe, fee of gratuity in connection with any official matter, including any offer of a bribe or gratuity to any DEA employee.

G. Extortion.

H. Embezzlement, misappropriating money or property, or failure to properly account for money, personal property, or any other item for which officially responsible.

I. Misprision or the failure to report to supervisors of DEA a violation of any law enforced by DEA, or fraud committed by anyone against the government.

J. Perjury or false statements concerning official matters, including false documentation, alteration, forgery or unauthorized destruction of official reports.

K. Use of narcotics or dangerous drugs designated by the Controlled Substances Act except as prescribed by a physician in the treatment of a diagnosed ailment.

L. Improper use of official position, commission, badge, and actual or implied authority.

M. Indictment, arrest or imminent arrest of DEA employees (excluding citations for minor traffic violations).

N. \*Any nonofficial association or financial transaction by DEA employees with informants, defendants, or persons known or suspected to be involved in the narcotics traffic or in any other criminal activity.\*

O. Any nonofficial association or financial transaction by DEA employees with defense attorneys, bondsmen or any other persons closely associated with DEA defendants.

P. \*\*Obstructing justice.\*\*

Q. Receiving or taking into custody any monies or other items except as specifically authorized by law or DEA order.

R. Morals allegations which require internal security investigations [ ].

S. Violation of any Federal laws or regulations restricting various political activities.

T. Any discharge of a firearm by a DEA employee, on or off duty, accidentally or intentionally, and any injuries or property

damage resulting therefrom, except when the discharge is part of an accepted sporting activity or normal firearms training or practice.

JOHN R. BROWN, Senior Circuit Judge, Concurring.

I concur but solely on the ground of flagrant deficiencies by Kelly in the summary judgment proceedings.[9]

As the Court's opinion reflects, Kelly wholly failed, as required by local Rule 18, to file an opposition statement or controverting factual affidavits. Thus the government's statement and supporting facts were uncontradicted. More than ignoring a local rule, this non-action flies directly in the face of *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986), and this Court's *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990).

But under Manual § 8121(A)(1), knowledge, by the local Bureau Chief (or his deputy), or at least some awareness of some gossip, rumor, or information that Kelly was involved in the leak, was indispensable to trigger the obligation to report to OIS.

Having completely failed even to remotely challenge that fact, that should be, as it was, really the end of the case.

But the Court does not stop there. Indeed, with all of the earmarks of deliberative certainty the Court enters the slippery field of discretionary function. If we had an outline of definitively authoritative principles this effort to rule categorically might be acceptable.

But one thing is sure: the Supreme Court, with all due respect, by its undula-tions from *Dalehite*[10] to *Indian Towing*[11] and *Rayonier*[12] to *Varig Airlines*[13] to *Berkowitz*[14] provides anything but a predictable certitude on what is, or is not, within a discretionary function. In this Serbodian bog we ought not to guess whether "will" means "must" or something less; or whether the lower ranking subordinate employee is the one to exercise that high level governmental judgment to declare the instruction discretionary beyond judicial scrutiny.

There is time in which to decide such issues after full briefing and argument on a record which under Article III really raises the issues.

Hence, my limited concurrence.

**9.** I concur as to substitution of the United States as the sole defendant.

**10.** *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

**11.** *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

**12.** *Rayonier v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957).

**13.** *United States v. Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

**14.** *Kevan Berkowitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).